*EX PARTE* KEELER.

1. COURT—HABEAS CORPUS—CONTEMPT—PROCEEDINGS.—A party who has been adjudged guilty of contempt of Court will not be released upon *habeas corpus*, unless the proceedings under which he is imprisoned are null and void, in whole or in part.

2. LEGISLATURE — LIQUORS —NUISANCE—REMEDY—CONSTITUTIONAL RIGHTS.—The Legislature has the right to declare places where liquors are sold to be common nuisances, to provide summary remedies to abate the nuisance, and such remedy is not unconstitutional because they deprive the party of those rights which, under the Constitution, he is ordinarily entitled to.

41—45

3. LEGISLATURE — PENITENTIARY — INJUNCTION — LIQUORS — CONTEMPT—REMEDY—COURT—NUISANCE.—To justify the Legislature in passing an act enabling a Judge to commit a citizen to hard labor in the State penitentiary, for violating an injunction restraining him from engaging in the sale of intoxicating liquors, it must appear (1) that the interest of the public generally require these stringent remedies, and (2) that they are reasonably necessary to accomplish the purposes for which it was enacted; and in determining if such remedies are reasonable, the Court will consider the value and nature of the property involved in the nuisance, and the difficulty of its suppression.

4. FINE AND PUNISHMENT—DISPENSARY ACT OF 1894—ART. I., SEC. 38, CON. OF 1868.—The fine and punishment imposed by section 22 of the Dispensary Act of 1894 is not cruel, excessive or unusual, nor contrary to the provisions of section 38 of article I. of the Constitution of 1868.

5. MR. CHIEF JUSTICE McIVER *dissenting*.

Petition in the original jurisdiction of the Court by Martin Keeler, for writ of *habeas corpus*.

The following is section 22 of the act of 1894 (21 Stat., 736,) in controversy:

SEC. 22. All places where alcoholic liquors are sold, bartered or given away in violation of this act, or where persons are permitted to resort for the purpose of drinking alcoholic liquors as a beverage, or where alcoholic liquors are kept for sale, barter or delivery in violation of this act, are hereby declared to be common nuisances, and any person may go before any trial justice in the county and swear out an arrest warrant on personal knowledge or on information and belief, charging said nuisance, giving the names of witnesses against the keeper or manager of such place and his aids and assistants, if any, and such trial justice shall direct such arrest warrant either to the sheriff of the county or to any special constable, commanding said defendant to be arrested and brought before him, to be dealt with according to law, and at the same time shall issue a search warrant, in which the premises in question shall be particularly described, commanding such sheriff or constable to thoroughly search the premises in question and to

seize all alcoholic liquors found thereon, and dispose of them as provided in section 33, and to seize all vessels, bar fixtures, screens, bottles, glasses and appurtenances apparently used or suitable for use in retailing liquors, to make a complete inventory thereof, and deposit the same with the sheriff. That under the arrest warrant the defendant shall be arrested and brought before such trial justice, and the case shall be disposed of as in case of other crimes beyond his jurisdiction, except that when he commits or binds over the parties for trial to the next term of Court of General Sessions for the county, he shall make out every paper in the case in duplicate, and file one with the clerk of the court for the county, and immediately transmit the other to the solicitor of the Circuit, whereupon said solicitor shall at once apply to the Circuit Judge at chambers within that Circuit for an order restraining the defendants, their servants or agents, from keeping, receiving, bartering, selling or giving away any alcoholic liquors until the further order of the Court. Such Circuit Judge is hereby authorized, empowered and required to grant the said restraining order without requiring a bond or undertaking, upon the hearing or receipt by him of said papers from the Court of the said trial justice by the hands of the solicitor; and any violation of said restraining order before the trial of the case shall be deemed a contempt of Court and punished as such by said Judge or Court, or any other Circuit Judge, as for the violation of an order of injunction. Upon conviction of said defendants of maintaining said nuisance at the trial, they or any of them shall be deemed guilty of a misdemeanor, punishable by imprisonment in the State penitentiary for a term of not less than three months, or a fine of not less than $200, or by both, in the discretion of the Court, and the restraining order shall be made perpetual. The articles covered by the inventory, which were retained by the sheriff, shall be forfeited to the State and sold, and the net proceeds sent to the State commissioner, and the sheriff shall forthwith proceed to dispose of the alcoholic

liquors covered by said inventory as provided for in this act as when other liquors are seized. The finding of such alcoholic liquors on such premises, with satisfactory evidence that the same was being disposed of contrary to this act, shall be *prima facie* evidence of the nuisance complained of. Liquors seized as hereinbefore provided, and the vessels containing them, shall not be taken from the custody of the officers in possession of the same by any writ of replevin or other process while the proceedings herein provided are pending. No suit shall lie for damages alleged to arise by seizure and detention of liquors under this act. Any person violating the terms of any restraining order granted in such proceedings shall be punished for contempt by a fine of not less than $200 nor more than $1,000, and by imprisonment in the State penitentiary not less than ninety days nor more than one year. In contempt proceedings arising out of the violation of any injunction granted under the provisions of this act, the Court, or in vacation, the Judge thereof, shall have power to try summarily and punish the party or parties guilty, as required by law. The affidavits upon which the attachment for contempt issues shall make a *prima facie* case for the State. The accused may plead in the same manner as to an indictment in so far as the same is applicable. Evidence may be oral or in the form of affidavits, or both. The defendant shall not necessarily be discharged upon his denial of the fact stated in the moving papers. The clerk of the court shall, upon the application of either party, issue subpoenas for witnesses, and except as above set forth, the practice in such contempt proceedings shall conform as nearly as may to the practice in the Court of Common Pleas. That when any solicitor neglects or refuses to perform any duty or to take any steps required of him by any of the provisions of the preceding section or by any of the provisions of this act, the attorney general on his own motion, or by the request of the governor, shall in person or by his assistant proceed to the locality and perform such neglected duty, and take such steps as are necessary in the place instead of

such solicitor, and at his discretion to cause a prosecution to be instituted, not only in the matter so neglected, but also a prosecution against the solicitor for malfeasance or misfeasance in office, or for official misconduct, or for other charges justified by facts, and to pursue the prosecution to the extent of a conviction and dismissal from office of any such solicitor. And in such event the attorney general shall be and is hereby authorized and empowered to appoint one or more additional assistants, who shall each have while actually employed the same compensation, to be paid from the litigation fund of the attorney general.

*Mr. Jas. E. Davis*, for petitioner.

*Mr. Attorney General Barber*, contra.

Jan. 30, 1896. The opinion of the Court was delivered by

MR. JUSTICE GARY. This is a proceeding in *habeas corpus*, in which Martin Keeler petitions this Court to be discharged from imprisonment in the State penitentiary. He was arrested under a warrant charging him with violation of what is called the dispensary act. He waived preliminary examination, and gave bond for his appearance at Court. A search warrant was issued against the said Martin Keeler, and certain intoxicating liquors were found, whereupon Mr. Solicitor Bellenger made application, in writing, for a restraining order against said Martin Keeler, which was granted by his Honor, Judge Watts. Thereafter a rule was issued against said defendant, to show cause why he should not be attached for contempt of Court in violating said restraining order, but this rule was discharged by his Honor, Judge Watts. Subsequently, however, his Honor, Judge Buchanan, after hearing affidavits and argument of counsel for the State and the defendant, adjudged the said defendant guilty of contempt of Court, in violating the restraining order aforesaid, and sentenced the defendant to pay a fine of $200, and to imprisonment in the State penitentiary for ninety days.

The proceedings under which the defendant was fined and imprisoned arose under section 22 of the dispensary act, which section will be set out in the report of the case. The defendant, in his petition, presents to this Court several grounds for his discharge from imprisonment, some of which the Court has not the power to consider in *habeas corpus* proceedings.

The defendant has been adjudged guilty of contempt of Court, and imprisoned therefor; this Court will, therefore, not release the defendant from imprisonment unless the proceedings in which he was adjudged guilty of contempt of Court are *null and void*, in whole or in part. The proceeding by *habeas corpus* is not a substitute for the right of appeal, and there are questions which, although they could properly be reviewed on appeal, cannot be considered in *habeas corpus* proceedings. This limitation upon the power of the Court, in *habeas corpus* proceedings, is clearly expressed by Mr. Justice Harlan in *Andrews* v. *Swartz*, 156 U. S., 272, where he speaks of "the well established rule, that a prisoner, under conviction and sentence of another Court, will not be discharged on *habeas corpus*, unless the Court that passed the sentence was so far without jurisdiction that its proceedings must be regarded as void," citing *Ex parte Seibold*, 100 U. S., 375; *In re Wood*, 140 U. S., 287, 11 Sup. Ct., 738; *In re Shibuya Jugiro*, 140 U. S., 297, 11 Sup. Ct., 770; *Pepke* v. *Cronan*, 155 U. S., 100, 15 Sup. Ct., 34.

We will now consider the question whether the proceedings under which the petitioner was imprisoned are null and void, either in whole or in part. The authorities sustain the following propositions of law: *First*. That the legislature has the power to declare places where liquor is sold contrary to law to be common nuisances, and to provide for their abatement. *Mugler* v. *Kansas*, 123 U. S., 623; *Kidd* v. *Pearson*, 128 U. S., 1; *Lawton* v. *Steele*, 152 U. S., 133. *Second*. That the legislature has the right to provide remedies, summary in

their nature, to prevent and abate such nuisances. *Third.*
That these summary remedies are not rendered unconstitu-
tional by reason of the fact that they deprive the defendant
of those rights under the Constitution to which ordinarily
he is entitled. *Fourth.* That to justify such summary pro-
ceedings it must appear: *first*, that the interests of the
public generally require these stringent remedies;
and, *second*, that they are reasonably necessary to
accomplish the purposes for which they were en-
acted. *Fifth.* That in determining if such remedies are
reasonable, the Court will consider the value and nature of
the property involved in the nuisance, and the difficulty of
its suppression. The granting of the restraining order to
prevent the defendant from carrying on a business, which
the legislature has declared a common nuisance, is a part
of the summary proceedings provided by the legislature
against such nuisances. The defendant is, therefore, not
entitled to invoke the provisions of the Constitution as to
the right of trial by jury in a case of this nature. In the
case of *Eilenberker* v. *Dist. Ct. of Plymouth County*, 134
U. S., 31, Mr. Justice Miller, for the Court, says: "If the
objection to the statute is that it authorizes a proceeding in
the nature of a suit in equity to suppress the manufacture
and sale of intoxicating liquors, which are by law prohibited,
and to abate the nuisance which the statute declares such
acts to be, wherever carried on, we respond that, so far as at
present advised, it appears to us that all the powers of a
Court, whether at common law or in chancery, may be
called into operation ·by a legislative body for the purpose
of suppressing this objectionable traffic; and we know of
no hindrance in the Constitution of the United States to
this form of proceeding, or to the Court in which this
remedy shall be had. Certainly, it seems to us to be quite
as wise to use the processes of the law and the powers of
the Court to prevent the evil as to punish the offense as a
crime after it has been committed. We think it was within
the power of the Court of Plymouth County to issue the

writs of injunction in these cases, and that the disobedience to them by the plaintiffs in error, subjected them to the proceedings for contempt, which were had before that Court." Mr. Justice Brown, speaking for the Court, in *Lawton* v. *Steele*, 152 U. S., 133, says: "It (the police power) is universally conceded to include everything essential to the public safety, health, and morals, and to justify the destruction or abatement, by summary proceedings, of whatever may be regarded as a public nuisance. Under this power it has been held that a State may order * * * the prohibition of gambling houses, and places where intoxicating liquors are sold. Beyond this, however, the State may interfere, whenever the public interests demand it, and, in this particular, a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. *Barbier* v. *Connolly*, 113 U. S., 27, 5 Sup. Ct., 357; *Kidd* v. *Pearson*, 128 U. S., 1, 9 Sup. Ct., 6. To justify the State in thus interposing its authority in behalf of the public, it must appear, *first*, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, *second*, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals." Again, "While the legislature has no right, arbitrarily, to declare that to be a nuisance which is, clearly, not so, a good deal must be left to its discretion in that regard; and, if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed," citing numerous authorities. Again, "The object of the law is undoubtedly a beneficent one, and the State ought not to be hampered in its enforcement by the application of constitutional provisions, which are intended for the protection of substantial rights of property. It is evident that the efficiency of this statute would be very seriously impaired by requiring every net illegally used to be carefully taken from the water, carried

before a court or magistrate, notice of the seizure to be given by publication, and regular judicial proceedings to be institnted for its condemnation. There is not a State in the Union which has not a constitutional provision entitling persons charged with crime to a trial by jury, and yet, from time immemorial, the practice has been to try persons charged with petty offenses before a police magistrate, who not only passed upon the question of guilt, but metes out the proper punishment. This has never been treated as an infraction of the Constitution, though, technically, a person may, in this way, be deprived of his liberty without the intervention of a jury. *Callan* v. *Wilson*, 127 U. S., 540, 8 Sup. Ct., 1301, and cases cited. So, the summary abatement of nuisances, without judicial process or proceeding, was well known to the common law long prior to the adoption of the Constitution, and it has never been supposed that the constitutional provision in question in this case was intended to interfere with established principles in that regard. Nor is a person, whose property is seized under the act in question, without his legal remedy. If, in fact, his property has been used in violation of the act, he has no just reason to complain; if not, he may replevy his nets from the officer seizing them, or, if they have been destroyed, may have his action for their value. In such cases the burden would be upon the defendant to prove a justification under the statute. As was said by the Supreme Court of New Jersey, in a similar case (*Print Works* v. *Lawrence*, 21 N. J. Law, 248–259): 'The party is not, in point of fact, deprived of a trial by jury. The evidence necessary to sustain the defense is changed. Even if the party were deprived of a trial by jury, the statute is not, therefore, necessarily unconstitutional.'" The dispensary act is not violative of any of the requirements hereinbefore mentioned.

It is also contended that the sentence is obnoxious to section 38 of art. 1 of the Constitution of 1868. The punishment provided in section 22 of the dispensary

4   act, for violation of the restraining order therein mentioned, is a fine of not less than $200 nor more than $1,000, and by imprisonment in the State penitentiary not less than ninety days nor more than one year. Section 38, art. 1, of the Constitution of 1868 provides that: "Excessive fines shall not be imposed, nor cruel and unusual punishment inflicted," &c. In our opinion, the fine imposed on the defendant was not excessive, nor the punishment inflicted cruel and unusual.

It is the judgment of this Court, that the petition be dismissed.

MR. JUSTICE McIVER, *dissenting*. This was an application originally addressed to the Chief Justice of this Court, for the purpose of obtaining a discharge of the petitioner from what he claimed to be an illegal confinement of his person in the State penitentiary. In the notice of the motion, which was duly served upon the solicitor of the Second Circuit, in which the case originated, it is stated that the motion would "be made upon the injunction papers issued by his Honor, Judge R. C. Watts, of date June 20th, 1895, and the rule and affidavit issued and made therein, together with the order discharging said rule; also the subsequent rule issued by his Honor, Judge O. W. Buchanan, and the affidavits made therein, the return thereof (thereto) and the affidavits submitted by defendant, and the order adjudging him in contempt—all of which are on file in the office of the clerk of the Circuit Court for the aforesaid county."

Accordingly, when the writ of *habeas corpus* was granted, an order was passed requiring the clerk of the Circuit Court for the said county—Barnwell—to send up a certified copy of all the proceedings below, which finally culminated in the order of Judge Buchanan committing the prisoner to the custody of the superintendent of the State penitentiary for a contempt in disobeying the restraining order of Judge Watts above referred to. The superintendent of the State penitentiary having made his return to the writ of *habeas*

*corpus*, which need not be set out or further referred to here, as it contains nothing which throws any light upon the question to be considered, and the clerk of the Circuit Court for Barnwell County having sent up a certified copy of the proceedings below, as required by the order above referred to, an order was passed transferring the case to a hearing before the full Court, as the questions involved were of a very grave and important character.

It is conceded that these proceedings were taken under the authority of the 22d section of an act entitled "An act to further declare the law in reference thereto, and further regulate the use, sale, consumption, transportation and disposition of alcoholic liquids or liquors within the State of South Carolina, and to police the same," approved 2d January, 1895. As this section is very long it will not be inserted here, especially as Mr. Justice Gary, in his opinion, has very properly directed that the section shall be set out in full in the report of this case. Inasmuch as it is too well settled to require the citation of any authority that a writ of *habeas corpus* cannot be used as a substitute for a writ of error or for an appeal, the only inquiry is whether the Court, or Judge below, had any jurisdiction to grant the order committing the prisoner to the custody of the superintendent of the State penitentiary, for a contempt in disobeying the restraining order of Judge Watts above referred to. This inquiry involves two general questions: 1st. Whether the proper steps were taken by which his Honor, Judge Watts, could acquire jurisdiction to grant the restraining order, under the provisions of the 22d section of the act above referred to, which, for convenience, may be designated as the dispensary act. 2d. Whether said section is unconstitutional. For in this case no question was raised— if, indeed, it could be successfully raised—as to the power of Judge Watts, who is the Judge of the Fourth and not of the Second Judicial Circuit, to grant such restraining order, inasmuch as it is conceded that Judge Watts, by lawful

authority, was at the time holding a Court within the Second Circuit.

The first question above stated renders it necessary that a careful analysis of the provisions of the 22d section of the dispensary act should be made. Without undertaking to state in detail all the provisions of that section, some of which are not pertinent to the present inquiry, it will be sufficient to say that, according to my understanding of that section, its scheme is that certain steps are required to be taken, in the order therein prescribed, before either the Court or a Judge thereof can acquire jurisdiction to issue an order restraining any person "from keeping, receiving, bartering, selling or giving away any alcoholic liquors," to wit: 1st. That some person "may go before any trial justice * * * and swear out an arrest warrant * * * charging said nuisance," and the person so charged shall be brought before the trial justice to be dealt with according to law. 2d. The trial justice shall at the same time issue a search warrant, requiring the officer to whom it is directed to search the premises charged to be a nuisance, and seize all alcoholic liquors found thereon. 3d. That when the defendant is brought before the trial justice "under the arrest warrant," the case shall be disposed of as in other cases beyond his jurisdiction, except that when he binds over the party for trial at the next term of the Court of Sessions, the trial justice "shall make out every paper in the case in duplicate," and file one with the clerk of the Court and transmit the other to the solicitor of the Circuit. 4th. The solicitor is then required to apply at once to the Circuit Judge within that Circuit for an order restraining the defendant from keeping, receiving, bartering, selling or giving away any alcoholic liquors until the further order of the Court. Such Circuit Judge is empowered and required to grant the restraining order without "requiring a bond or undertaking upon the hearing or receipt by him of said papers from the Court of the said trial justice by the hands of the solicitor, and any violation of said restraining order before the trial

of the case shall be deemed a contempt of Court, and punished as such by said Judge or Court, or any other Circuit Judge, "as for the violation of an order of injunction." 5th. The act next provides that upon the conviction of the defendant of maintaining said nuisance at the trial, he shall suffer the punishment prescribed, "and the restraining order shall be made perpetual." 6th. The act again provides that a person violating the restraining order may be punished for a contempt, and prescribes the punishment that may be imposed. The act then proceeds to declare that in such contempt proceedings "the Court, or in vacation the Judge thereof, shall have power to try summarily and punish the party or parties guilty as required by law;" and after making some provisions as to the mode of pleading and adducing evidence, and securing the attendance of witnesses, declares that "the practice in such contempt proceedings shall conform as nearly as may to the practice in the Court of Common Pleas." From this brief review of the provisions of the 22d section of the dispensary act, it is very obvious that the unusually stringent remedy therein provided cannot be successfully resorted to unless the several conditions prescribed are strictly complied with. Even in cases involving mere property rights, the rule is well settled that a person is not entitled to the stringent remedy of attachment and seizure of his alleged debtor's property without strictly complying with the conditions prescribed upon which such remedy may be resorted to. As was said in *Bank* v. *Stelling*, 31 S. C., at page 369, "as the remedy by attachment is a summary and somewhat harsh proceeding, whereby a person may be deprived of the possession or control of his property before the claim upon which it was based has been adjudicated, the rule is well settled that one who seeks to avail himself of such a remedy must be careful to comply strictly with the conditions upon which it is allowed." To same effect see *Wagener* v. *Booker*, 31 S. C., 375, and *Booker* v. *Smith*, 38 S. C., 228. Now, if this be the settled rule in reference to cases involving merely rights

of property, with how much greater force should it apply to cases involving the liberty of the citizen.

Guided by this well settled rule, let us examine the various steps taken in this case, as disclosed by the certified copy of the record, which has been sent up by the clerk of the Circuit Court, now before us. Without going into unnecessary details, that record discloses the following facts: *First.* A search warrant was issued by a trial justice on the 25th of April, 1895, reciting that, upon information of J. B. Ross, "contraband intoxicating liquors are now unlawfully in the possession, storage, and keeping of, and on the premises occupied by, Martin Keeler," in the town of Blackville, and directing the officer to whom such warrant was directed to search for and seize such contraband liquors. There is no return endorsed upon this warrant, and nothing to show whether any, and if so what, action was taken under it. *Second.* Next we find an affidavit of J. B. Ross, bearing date the 26th of April, 1895, stating that Martin Keeler, on the 25th of April, 1895, and at other times, "did violate the laws and statutes of the State by selling, without permission or license, whiskey and other intoxicating liquors," to which is appended an order, signed by the trial justice, dated 26th April, 1895, to "arrest and bring before me Martin Keeler, charged with violating the dispensary law." *Third.* A recognizance of Martin Keeler to appear before the Court of General Sessions, on the second Monday in November, 1895, "to answer to a bill of indictment to be preferred against the said Martin Keeler," for what offense is not stated. This recognizance bears date 27th April, 1895. *Fourth.* A search warrant, issued by a trial justice on the 1st of June, 1895, requiring the officer to whom it was directed to search the premises of Martin Keeler, and seize any contraband liquors found thereon. This warrant is based upon the affidavit of J. B. Ross, bearing date 1st of June, 1895, "that he is informed by my own observations, and verily believes from such information, and his own observation, that in the house of Martin Keeler

there is now deposited, stored, and kept contraband liquors, in violation of law, to wit: whiskey and other intoxicating (liquors), and that said intoxicating and contraband liquors are there kept, stored, and deposited by Martin Keeler, his aiders and abettors, without a permit, in violation of the laws of the State." Upon this search warrant there is no return, and nothing to show whether any action, and if so what, was taken under it. *Fifth.* Next comes the application of the solicitor (without date) for the restraining order, which was made out on a printed blank, and which, after the blanks were filled, as appears in the record, reads as follows: "South Carolina, Barnwell County. And now comes G. Duncan Bellinger, solicitor for the second Circuit, in which has been obtained an arrest and search warrant against Martin Keeler, issued by Trial Justice A. P. Woodward, of the county and State above named, and upon the return of which search warrant certain contraband and intoxicating liquors were found, being so kept without a permit, as a reference to the trial justice papers, hereto attached, will more fully appear, and show to this honorable Court, that the circumstances and conditions contemplated by the dispensary act having arisen in the enforcement of the provisions of the same, and the papers hereto attached, charging as a nuisance the place therein mentioned, it becomes my duty to pray the issuance of an order restraining the said Martin Keeler, his agents, servants, and employees, from keeping, receiving, bartering, selling or giving away any alcoholic liquors until the further order of the Court." Appended to this application is the order of Judge Watts, bearing date 20th June, 1895, restraining the said Martin Keeler from keeping, receiving, bartering, selling or giving away any alcoholic liquors until the further order of the Court. *Sixth.* An order of Judge Watts, bearing date the 19th of August, 1895, requiring Martin Keeler to show cause before him, on the 21st of August, 1895, why he should not be attached for a contempt in disobeying the restraining order of 20th June, 1895. This rule to show

cause was based upon an affidavit dated 16th of August, 1895, stating that said Keeler sold liquors on the 3d of August, 1895, and on divers other days before and after that date, and subsequent to the date of the restraining order. Upon the return to this rule, and after hearing the affidavits submitted, his Honor, Judge Watts, granted an order (without date) discharging said rule. *Seventh.* On the 9th of November, 1895, the trial justice issued a warrant, reciting, "Whereas, complaint has been made unto me by H. J. Croft that Martin Keeler has unlawfully violated the dispensary act in keeping, selling or storing contraband intoxicating liquors, and without any permit, certificate or State license. These are, therefore, to command you to apprehend the said Martin Keeler and bring him before me, to be dealt with according to the law." Upon this warrant the following endorsement appears: "The defendant was arrested and brought up for a preliminary hearing. The evidence being deemed sufficient, he was bound over to appear for trial at the Court of General Sessions, on the second Monday in November, 1895," signed by the trial justice. Accordingly, we find in the record the recognizance of the said Martin Keeler to appear and answer to a bill of indictment "for a violation of dispensary act," bearing date 9th of November, 1895. *Eighth.* Next we find an order of his Honor, Judge Buchanan, bearing date 12th' November, 1895, requiring Martin Keeler to show cause before him, on the 16th November, 1895, "why he should not be adjudged guilty of contempt for violating the restraining order made herein by the Hon. R. C. Watts, presiding Judge in the second Circuit, on the 20th day of June, 1895." This rule to show cause was based upon affidavits stating that said Keeler had sold whiskey to a negro on the night of the 8th November, 1895. *Ninth.* Upon hearing the returns to said rule, with the affidavits submitted, Judge Buchanan, on the 25th of November, 1895, granted an order adjudging the said Martin Keeler guilty of contempt in disobeying the restraining order of Judge Watts, hereinbefore referred to,

and sentenced him to pay a fine of $200, and to be confined to the State penitentiary for ninety days. From this statement of the proceeding, which culminated in the order of Judge Buchanan, adjudging the petitioner in contempt, in disobeying the restraining order of Judge Watts, and imprisoning him in the State penitentiary as a punishment for such contempt, it seems to me clear, that such proceedings are fundamentally defective in at least two respects, and hence neither the Court, nor any Judge thereof, ever acquired jurisdiction either to grant the restraining order or the order punishing the petitioner for a contempt in disobeying such restraining order. In the first place, the very first step required by the statute to be taken, in order to initiate proceedings for contempt, does not appear to have been taken. The first provision in the section is, that some person shall obtain from a trial justice a warrant charging the person accused with committing the nuisance created by that section; and the record will be searched in vain for any evidence that any such warrant was ever obtained or applied for. As we have seen, from the abstract of the record above set forth, the first step which was taken was procuring a *search* warrant—not an "arrest warrant," as it is termed in the statute—which was obtained on the 25th of April, 1895, and the warrant for the arrest of the petitioner, issued on the next day—the 26th of April, 1895—so far from charging the petitioner with keeping or maintaining the nuisances denounced by the statute, simply charged the petitioner, in the most general terms, with "violating the dispensary law," without stating or even intimating what provision of the dispensary law he had violated; and it is very obvious that the dispensary act creates several distinct and different offenses, with distinct and different penalties attached. And if we turn to the affidavit upon which this warrant was based, we find that it is there stated that the petitioner "did violate the laws and statutes of the State by selling, without permit or license, whiskey and other intoxicating liquors." It is clear, therefore, that this

42—45

warrant did not charge the offense of keeping and main-
taining a nuisance, denounced by the 22d section of the
dispensary act, but, on the contrary, did charge an offense
denounced by another section of that act. So, also, the
warrant issued on the 1st of June, 1895, was a *search* war-
rant, and not an "arrest warrant," and neither that warrant
nor the affidavit upon which it was based contains any
charge of nuisance. While it is true that the recitals con-
tained in the application of the solicitor for the restraining
order do seem to imply that the petitioner was charged with
keeping and maintaining a nuisance, and that the return
on the search warrant showed that "certain contraband and
intoxicating liquors" were found on the premises of the
petitioner, yet these recitals are based expressly upon the
several papers issued by the trial justice, and, as we have
seen, these papers utterly fail to sustain such recitals, and
do not show that there ever was any return made upon
either of the search warrants, nor do they show that any
intoxicating liquors were found upon the premises of the
petitioner, and do not show that any action whatever was
taken under either of the search warrants. So that it is
plain that the record before us fails to show that the neces-
sary steps prescribed by the statute were ever taken in order
to confer jurisdiction to issue the restraining order; and if
so, then it necessarily follows that the proceedings for con-
tempt of any order issued without jurisdiction, are also void
for want of jurisdiction.

If it should be said that the admission, signed by the at-
torney for petitioner and the assistant attorney general,
"That all the proceedings taken by Solicitor Bellinger before
Judge Buchanan were regular, so far as petition, affidavits,
etc., are concerned," concludes the question of jurisdiction,
the answer would be that consent cannot confer jurisdiction;
and if the consent of the parties themselves cannot confer
jurisdiction, surely no admissions of their attorneys could
have that effect, when, as we have seen, the record before
the Court shows a lack of jurisdiction. Besides, there is no

admission that the proceedings before Judge Watts to obtain the restraining order "were regular;" and this constitutes the fundamental jurisdictional objection. It is scarcely necessary to notice the warrant issued by the trial justice on the 9th of November, 1895, for neither that warrant nor the affidavit upon which it is based purports to charge the petitioner with keeping or maintaining a nuisance, as forbidden by the 22d section of the dispensary act; and, on the contrary, the offense then charged was under another section of the dispensary act. Besides, Judge Buchanan did not, and could not, base his order for a rule to show cause, and his final order adjudging the petitioner to be guilty of contempt upon that prosecution, for the obvious reason that it was not followed up by any application for a restraining order. On the contrary, his action was based entirely upon the original prosecution, followed up by the restraining order of Judge Watts, granted on the 20th of June, 1895. I may add here, that there is nothing in the position taken by counsel for petitioner, that Judge Watts had previously discharged a rule to show cause why the petitioner should not be adjudged guilty of a contempt in disobeying his restraining order of 20th of June, 1895, and, therefore, that the matter was *res adjudicata;* for the papers show that the proceedings for contempt before Judge Watts were based upon the charge of selling liquor, on or about the *3d of August, 1895*, while the similar proceeding before Judge Buchanan was based upon a charge of selling liquor on the 8th of November, 1895, some time afterward; and while it might have been entirely true that the evidence was not sufficient to restrain the charge of selling liquor on the 3d of August, 1895, as, no doubt, was the fact, yet that did not even tend to show that the charge of selling liquor on the 8th of November, 1895, was not sustained by the evidence.

In the second place, it does not appear from the record before us that any action was ever instituted against the petitioner under which an application for a restraining order, or for an injunction, as it is indifferently spoken of

in the act, could be made. While it is true that there is no provision in the 22d section of the dispensary act requiring that the application for a restraining order must be made in an action instituted for that purpose, yet is it equally true that there is no provision in that section, or any other section of the dispensary act, providing for any other mode by which an application for an injunction or a restraining order may be made; and hence, in the absence of any such provision, it follows, necessarily, that the only mode provided by the general law for obtaining an injunction, to wit: by an action, must be pursued. The provision in the section, that the solicitor shall, upon the papers furnished him by the trial justice, apply to the Circuit Judge for a restraining order, certainly does not prescribe any mode of proceeding by which such an application shall be made. It simply provides the basis or evidence upon which the application may be made. Besides all this, it seems to me, from an attentive and careful examination of the provisions of section 22 of the dispensary act, that it is more than doubtful, to say the least of it, whether the legislature ever intended that a citizen should be deprived of his liberty and subjected to the degrading punishment of confinement in the penitentiary, for disobeying an order forbidding him to keep or maintain an alleged nuisance, before it had been ascertained by the verdict of a jury that he has ever kept or maintained a nuisance. Otherwise, whence the necessity of requiring, as the very first step in the proceedings, that a warrant shall be issued charging the accused with keeping and maintaining a nuisance, under which he shall be arrested and bound over to answer, in the Court of Sessions, to a bill of indictment for such offense, where of course he would be entitled to a trial by jury? On the contrary, it seems to me that the more reasonable construction of the section is, that the intention of the legislature was, that the person charged with keeping and maintaining the nuisance created by the section in question should be indicted and tried in the regular way for that offense; and for

the purpose of preventing the continuance of the alleged nuisance, pending the prosecution, an order may be granted enjoining and restraining the accused from continuing such nuisance, for disobedience of which, as in any other case of injunction, he may be punished as for a contempt, *after the fact of nuisance* has been judicially ascertained by the verdict of the jury. Suppose it should be ascertained, judicially, upon the trial of the indictment for nuisance, that the accused had never been guilty of keeping or maintaining a nuisance, then, if, in the meantime, he shall be punished for a contempt in disobeying an order restraining him from keeping and maintaining a nuisance, under summary proceedings for contempt, he will have been punished, by confinement in the penitentiary, for doing an act which it has been judicially ascertained, by the verdict of jury, he never did do. Surely the legislature never intended any such result, and I would be very unwilling to attribute to them any such intention, unless it was plainly expressed in much more explicit terms than those found in section 22 of dispensary act.

Under this view, the second general question, as to the constitutionality of the 22d section of the dispensary act, does not necessarily arise, and, therefore, under well settled principles, should not be considered.

I am, therefore, of the opinion that the petitioner, Martin Keeler, has been deprived of his liberty without due warrant of law, and is, therefore, entitled to a discharge.

MR. JUSTICE POPE. The facts underlying the application of the petitioner to this Court are so clearly and abundantly set forth in the opinion of Mr. Justice Gary, and the dissenting opinion of Mr. Chief Justice McIver, that they need not be repeated here. I have thought the gravity of the questions here presented, together with the fact that the two Justices already named have pursued divergent lines of thought in reaching a conclusion, demanded an expression of my own views. Mr. Justice Gary, in the

main, treats of the constitutional questions raised by the petitioner, while the Chief Justice devotes his attention wholly to the preliminary questions of jurisdiction, and has reached a conclusion satisfactory to himself, that the Judges below were without jurisdiction to pass the orders made by them respectively.

If the Judges below were without jurisdiction to pass the orders now in review, of course no constitutional questions are of any practical effect in determining whether the petitioner is illegally restrained of his liberty. It is thus manifest that the question of jurisdiction must first be determined. Jurisdiction involves the power of these Circuit Judges over the person and the subject-matter. As to the latter, I do not understand that any difficulty exists. If the question of the constitutional power in the General Assembly of this State to pass as law the different provisions contained in section 22 of the dispensary act is for the time admitted, it is very certain that the jurisdiction of the subject-matter is given these Circuit Judges to pass not only the order of injunction, but also to punish any disobedience thereof by the petitioner as a willful contempt of Court, by an imprisonment in the State penitentiary. The theory of the government in this matter is simply this: The sale of intoxicants, by individuals without a license therefor, is not only illegal, but the continued sale of such intoxicants by an individual without a license therefor is a nuisance; that upon certain steps being taken, a Circuit Judge may grant an order of injunction, whereby such individual, who is continuously selling intoxicants contrary to law, is forbidden so to break the law. Thereafter, if such individual willfully disobeys the order of injunction against him, he is punished for a contempt of Court. In all these matters, as I before remarked, there is no contest here. Therefore, the two questions are left: 1st. Did the Circuit Judge who passed the order in November last have jurisdiction of *the person* of the petitioner, when he passed his order directing his imprisonment for contempt of Court? 2d. Are the pro-

visions of the 22d section of the dispensary act obnoxious to the provisions of the State Constitution as complained of by the petitioner?

First. It is admitted that every order passed by a Judge, who has no jurisdiction of *the person*, so far as such individual is concerned, is void. Power or jurisdiction of the person, so far as Courts are concerned, is secured by the service of some process fixed and regulated by law. Thus, if a judgment on the civil side of the Court is desired against an individual, a summons is issued and served upon him. And if a judgment on the criminal side of the Court is desired against an individual, a warrant for his arrest is issued, and he is taken in custody thereunder. But it sometimes happens that an individual against whom a judgment on the civil side of the Court is desired, although service of the summons has not been made upon him, appears voluntarily in Court and contests the right of a judgment against him on the merits. In such an event, the Court is said to have acquired jurisdiction of his person, although no summons was served upon him, or it may be, could not have been served upon him. This is not a new doctrine, but has been upheld by repeated adjudications of this and other Courts. In *Gravely* v. *Gravely*, 20 S. C., 104, it was said: "For it seems to us, by answering to the merits, she (the defendant) properly submitted herself to the jurisdiction of the Court, and the matter stands as if she accepted service or authorized her attorney to do so for her." To the same effect are the decisions of *Oliver* v. *Fowler*, 22 S. C., 540; *Chafee* v. *Postal Tel. Co.*, 35 S. C., 378; *Meinhard Bros.* v. *Youngblood*, 37 S. C., 236. A like doctrine is maintained by the Supreme Court of the United States in *Toland* v. *Sprague*, 12 Peters, 330. Not only this doctrine persistently and continuously held in actions in the Courts of Common Pleas, but also in the Courts of General Sessions. Two cases are cited: *State* v. *Hatcher*, 11 Rich., 525. At the fall term, 1835, of the Court of General Sessions for Edgefield District, one Hatcher had been indicted

for keeping a riotous and disorderly house, and a true bill was found; that at the spring term, 1837, a verdict of guilty was rendered and a sentence endorsed on the indictment by his Honer, Judge O'Neall. There was an affidavit and also a warrant to arrest, but no entry or endorsement which showed that the defendant had been arrested or that he had entered into recognizance to appear. In 1844, a *scire facias quare executio non* was served on the defendant, to which he made default, and an order for execution to issue was passed. In 1857 the defendant moved before his Honor, Judge Wardlaw, at Edgefield, that all the proceedings subsequent to the findings of the grand jury be set aside, and as the basis of his motion presented his own affidavit, which recited that he had never been arrested under the warrant; that he had never entered into recognizance to appear; that he was absent from the State from the fall of 1836 until December, 1838, and that he had no knowledge that the proceedings were pending against him until long after the trial and conviction. On appeal before a full Court, the defendant's motion was denied. In the opinion of the Court, it is said: "The sentence in this case appears to have been rendered more than twenty years ago. * * After such a lapse of time, it is in vain to say that neither the warrant, &c., can be found. The law presumes *omnia esse rite acta.* But, in addition to this, the defendant has been served with a *scire facias quare executio non*, made default, and thereupon execution issued for the collection of the fine. This would be enough to prevent his present motion from receiving any favor from the Court." *The State* v. *Sarratt*, 14 Rich., 29. The defendant was charged with bastardy. A warrant of arrest had been issued, and the officer made a return of *non est inventus.* Thereafter, 12th May, 1859, a bench warrant was issued from the Court of General Sessions for Union District, not under the provisions of the bastardy act, but requiring the defendant to enter into recognizance to appear and answer to a bill of indictment. A true bill was found at fall term, 1859, to which he appeared,

plead not guilty, and traversed the case. At his trial at the
fall term in 1860, defendant insisted that all these proceed-
ings to make him a party in Court were wholly irregular
and void for want of conformity to the provisions of the
bastardy act of 1839. After conviction, he appealed to this
Court on these questions: This Court discussed the appeal
and affirmed judgment, holding, in the opinion of the Court
as announced by Wardlaw, A. J.: "The defendant, it is said,
was never arrested, and it is vehemently urged that injus-
tice was done to him by the holding that his *appearance
and pleading effected* a waiver to the irregularity of pro-
ceedings by which he was brought in. *He appeared, he
made his defense,* he recognized the advocacy of his counsel
on the Circuit, and through them he has been heard here.
* * * But by voluntary appearance, no more than by com-
pulsory attendance, was the defendant deprived of any
ground of defense, and to any departure from a course pre-
scribed by law; he was at liberty to object under the general
issue. His objection is, that the bill of indictment against
him was not found before a bench warrant was issued.
Suppose this to be so, and, further, suppose that, for this
and other reasons, the bench warrant was irregular and void,
it would follow that his arrest under that warrant was un-
lawful, that his recognizance, if he gave one, might be im-
peached for duress, and that his counsel might have moved
for his discharge from arrest and recognizance. *But his
counsel appeared and pleaded, and he was present and made
defense. Nothing which preceded could destroy the effect of
this acknowledgement of the jurisdiction of the Court over
his person and his case;* and when urged as matters as of
technical objection on the trial, the supposed irregularities
must have been wholly unavailing" (italics ours). Apply-
ing these principles to the facts as developed in the case at
bar, it will be readily seen that the petitioner here cannot
successfully contend there was no jurisdiction *of the person*
acquired by the Court below. He distinctly and deliber-
ately appeared before Judge Watts, in August last, and con-

tested, on the merits, his violation of the order of injunction. In the hearing before us, he relies upon, as a part of his case, the decision of Judge Watts, that the evidence heard by him did not establish a willful disregard of the order of injunction. When he was brought before Judge Buchanan, to answer a second charge of disobedience of the order of injunction, he answered fully as to the merits, and it was as to the proofs of such·charge, on both sides of the controversy, that Judge Buchanan decided that he was in contempt. No appeal was taken from this order of Judge Buchanan.

I am compelled to differ from the Chief Justice in his conclusions on this branch of the case.

It now remains for me to consider the second branch of the case, to wit: the constitutional questions presented. But before entering upon the consideration of the second question, I have thought that a few words may be addressed to the question involved in so much of the appeal as relates to the distinction between "action" and "application." The General Assembly has used the latter in the section under consideration. It was in the power of the General Assembly to direct and prescribe the form of pleading—this it has done. When we remember that the object of the act is to suppress a nuisance, it is easily seen that the very design of the law might be defeated if delay was allowed. In the cases cited in the opinion of Mr. Justice Gary, it will be noticed that the adoption by the legislature of *summary proceedings* are allowed in suppressing nuisances. I content myself with such citations of authorities. I, therefore, see no difficulty in such suggestion. But be that as it may, the petitioner, by answering the merits, waived any such objection, even if it was sound.

I am entirely satisfied with the reasoning and citations employed by Mr. Justice Gary in his opinion in this case, in disposing of all the questions suggested by the petitioner as to the constitutionality of section 22 of the dispensary act. I shall·content myself, therefore, with a concurrence therein.

It follows that the ·petitioner must be denied the relief prayed for.