*In the Matter of the Application of* CARRIE GRIBBEN *for a Writ of Habeas Corpus.*

1. MUNICIPAL CORPORATIONS—*Police Regulations—Street Parades—Constitutionality of Ordinance*. A city ordinance providing that "The making of any noise upon the streets or sidewalks of the city by means of drums or musical instruments or otherwise, of such a character, extent and duration to annoy and disturb others, is hereby prohibited and it is hereby made the duty of the mayor and the city marshal to order any person or persons making such noise to desist therefrom, and the failure or refusal of such person or persons to promptly obey such order of the mayor or city marshal is hereby declared to be a misdemeanor," and providing punishment therefor by fine or imprisonment, is invalid, because unreasonable and not essential or indispensable to carrying into effect any of the purposes for which a city is created, and is oppressive and in contravention of common rights.

2. HABEAS CORPUS. A person in arrest, upon a warrant, charging a violation of a city ordinance that is void, may be released therefrom by *habeas corpus* proceedings. In such case, the party in arrest, need not submit to trial in the court issuing such warrant, and is not compelled to seek relief by appeal or proceedings in error.

3. SAME—*Proper Remedy, When*. Where the imprisonment is upon process erroneously or irregularly issued, the party seeking relief must proceed by appeal or proceedings in error; but where there is an entire want of jurisdiction in the court to issue the process, *habeas corpus* is the proper remedy.

*Original Proceeding in Habeas Corpus.*

Proceeding by petition for *habeas corpus* in which the petitioner represents that she is a member of a religious organization, known as the Salvation Army, and praying that she be released from imprisonment, in which she is held, under a warrant of arrest, issued by the police judge of the city of Oklahoma City, under authority of an ordinance of said city, which petitioner alleges to be void.

*Redick, Lewis & Snyder*, for petitioner.

*W. R. Taylor*, for respondent.

The opinion of the court was delivered by

TARSNEY, J.: The petitioner, Carrie Gribben, was, on the fifth day of July, 1895, while engaged in religious work, as a member of a religious organization, known as the Salvation Army, and holding religious services on a public street of Oklahoma City, arrested by J. H. Boles, the respondent, as chief of police of said city, and taken into custody under a warrant issued by the police judge of said city, charging the petitioner with violating an · ordinance of said city, by making a noise upon the streets of said city, by beating a drum therein, said noise then and there made, being of such a character, and to such an extent, and at such a time and place, as would be likely to cause horses and teams to become frightened and ungovernable; and of such a character, extent and duration as to annoy and disturb other persons; that she, the said petitioner, was then and there requested and ordered, by the marshal of said city, to desist from making such noise; that she then and there failed and refused to obey said order, contrary to the ordinances and against the peace and quiet of said city.

· The ordinance referred to in said warrant, and upon which said warrant was based, was Ordinance No. 164 of said city, entitled, "An Ordinance to Restrain and Prohibit the Use of Drums and Other Musical Instruments on the' Public Streets, Within the Limits of Oklahoma City, Which Becomes an Annoyance and a Nuisance to the Public and Dangerous to Public Safety." Said ordinance was as follows:

*"Be it Ordained by the Mayor and Councilmen of the City of Oklahoma City, O. T.:* ·

"SECTION 1. That the making of any noise upon the streets or sidewalks of the city, by means of drums or

musical instruments or otherwise, of such a character, extent and duration as to annoy and disturb others, is hereby prohibited; and it is hereby made the duty of the mayor and city marshal to order any person or persons, making such noise, to desist therefrom, and the failure or refusal of such person or persons to promptly obey such order of the mayor or city marshal, is hereby declared to be a misdemeanor, and upon conviction thereof, such person or persons shall be punished by a fine of not less than five dollars, and not more than one hundred dollars, for each offense, in the discretion of the court, and shall be imprisoned in the county jail until such fine and cost of the prosecution are paid."

The validity of this ordinance is disputed by the petitioner on the ground that the city council had no authority to pass said ordinance or any ordinance of such a nature; that said ordinance is void because indefinite and uncertain; because it confers arbitrary powers upon officers of the city; that it is unreasonable, does not operate uniformly and impartially and contravenes common rights; that it was not passed for the furtherance of any public purpose, for which said city was authorized, by law, to make by-laws or ordinances, but was passed by said city council with the view, and for the purpose, of suppressing the Salvation Army, and for the purpose of preventing the members of said army from worshiping God and conducting religious services in accordance with the requirements and rules of said organization.

A municipal corporation has no inherent jurisdiction to make laws or adopt regulations of government. They are governments of granted and enumerated powers, acting by delegated authority. The character of the general law, which creates them, is their constitution, in which they must be able to show authority for the acts they assume to perform. While state legislatures may

exercise such powers of government coming within a proper designation of legislative powers, as are not expressly or impliedly prohibited, the legislative body of a municipal corporation can exercise those powers only which are expressly or impliedly conferred by charter or the general law.

The general scope, plan and purpose in the creation of municipal corporations, as deducible from their charters or general laws under which they are organized, is the aiding of the state, within the local district for which they are created, in protecting the public peace and order, the public health, public morals, public safety, public convenience, and the trade and commerce of the inhabitants.    For the carrying out of these objects and purposes, not only must there be a direct grant of authority and power · therefor from the state, but the exercise of such power, by the corporation, must be reasonable, and not inconsistent with the laws or general policy of the state; must not be oppressive, nor partial, nor unfair, nor make special or unwarranted discriminations, and must not contravene common rights.

It is essential, to the validity of an ordinance, first, that the power to ordain such ordinance has been delegated and granted to the corporation by the legislature; and, second, that such power has been exercised in conformity with the rules we have just stated.

To determine the validity of the ordinance in question, in this case, we must first determine whether there has been a grant or delegation of authority by the legislature of the territory to the city of Oklahoma City to pass such ordinance.    The city of Oklahnma City was not created by special charter, but is organized as a city of the first class under the provisions of a general law of the territory, being ch. 14. of the Statutes of 1893.

Mr. Dillon, in his work on Municipal Corporations, vol. 1, p. 115, third edition, says:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no other:   First, those granted in express words; second, those necessarily or fairly implied in, or incident to, the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable.

"Any fair reasonable doubt concerning the existence of power is resolved by the court against the corporation and the power is denied.   Of every municipal corporation, the charter, or statute, by which it was created, is its organic act.   Neither the corporation nor its officers can do any act or make any contract or incur any liability not authorized thereby.   All acts beyond the scope of the powers granted, are void."

The only provisions in the Statutes of Oklahoma, which confers upon municipal corporations police powers, in any degree similar to the power attempted to be exercised under the ordinance in question, in this case, are found in § 2, art. 3, of said ch. 14, p. 165, Statutes of 1893, which reads:

"SEC. 2.   The mayor and council shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, alter, modify or repeal any and all ordinances not repugnant to the constitution of the United States and the Organic Act and laws of this territory, as they shall deem expedient and for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, and the benefit of trade and commerce, and the health of the inhabitants thereof, and such ordinances, rules and regulations as may be necessary to carry such powers into effect."

Also § 22 of said art. 3, as follows:

"The council may also restrain and prohibit riots, routs, noises, assaults, assaults and batteries, petty larceny, disturbances or disorderly assemblies, and immoral and indecent shows, exhibitions and concerts in and any street, house or place in the city, end regulate, punish and prevent the discharge of fire-arms, rockets, powder, fire-works or other dangerous combustible material in the streets, lots, grounds, alleys or about or in the vicinity of any building."

And § 39, of said article, which reads as follows:

"For any purpose or purposes mentioned in the preceding section, the council shall have power to enact and make all necessary ordinances, rules and regulations, and they shall also have power to enact and make all such ordinances, by-laws, rules and regulations not inconsistent with the laws of the territory, as may be expedient for maintaining the peace, good government and welfare of the city in its trade and commerce, and all ordinances may be enforced by prescribing and inflicting upon inhabitants and other persons violating the same, such fine not exceeding one hundred dollars, or such imprisonment not exceeding three months, or both such fine and imprisonment as may be just."

There is no provision in the general laws of this territory, relating to cities of the first class, which, in express terms, authorizes such cities to control, prescribe and regulate the manner in which the highways, streets, avenues, lanes, alleys, public grounds within said city, shall be used; or to prohibit practices, amusements and doings in said streets, having a tendency to frighten teams and horses, and dangerous to life and property. There is, in the statute, no express reference to the use of streets for processions, or any power given in express terms to prohibit, suppress, license or regulate the use of drums or other musical instruments in said streets. It contains no

reference to streets beyond such as contemplate that they shall be under municipal control, in the usual ways, some of which are mentioned.

It cannot be contended that authority for this ordinance could be derived from a grant of power, "to prevent vice and immorality," "to preserve public peace and good order," "to prevent and quell riots, disturbances and disorderly assemblages," "the benefit of trade and commerce," and "the protection of the health of the inhabitants," or that it was derived from the power "to restrain and prohibit routs, noises, assaults, assaults and batteries, petty larceny, disturbances or disorderly assemblies or immoral and indecent shows, exhibitions and concerts." Nor, can we assent to the reasoning or conclusion of counsel for respondent who say that:

"Under our statutes the mayor and council of cities of the first class are authorized to pass any and all laws not in conflict with the constitution and laws of the United States, the Organic Act and the laws of the territory."

To give the clause of the statute, to which counsel refer, the construction contended for, would be to give the city council legislative authority and jurisdiction concurrent with and co-extensive with that possessed by congress and the territorial legislature. That provision cannot be construed as a grant of power, but as a restriction upon powers that otherwise might be possessed. It means, and means only, that within the scope and for the objects and purposes of the corporation, the city council shall have power to pass all ordinances, rules and regulations not inconsistent with or repugnant to the laws of the United States or of the territory; but their ordinances must be for the purposes and within the limitations of the legislative power delegated to them, as well as consistent and

25—v.

*In re* Gribben, petitioner.

not repugnant to the laws of the United States and the territory.

Applying the test of the rule laid down by Mr. Dillon, in the paragraph from his work cited, *supra*, to the statutes under which the city of Oklahoma City was created, we cannot find that the power to enact the ordinance in question was granted by said statute in express words; nor, can we find that such power can necessarily or fairly be implied from or that it was an incident to any of the powers therein expressly granted. If, therefore, it has any validity, such validity must be based upon the third rule laid down by Mr. Dillon, namely: That the power for its enactment was essential to the declared objects and purposes of the corporation, and indispensable to the attainment of such objects and purposes.

What declared object and purpose of the corporation could the power to pass this ordinance have been essential to? Was it indespensable that the council should have had power to pass this ordinance to protect the public peace, the public health, the public morals, public safety or benefit trade and commerce; or, was it indispensable·to the convenience and welfare of the inhabitants of the city? Unless we declare in the affirmative, we must hold that there was no authority for the passage of such an ordinance, and that its passage and attempted enforcement was an attempt to exercise, and in an unreasonable manner, a power which the council did not possess. Certainly it could not be contended that it could be based upon any of the objects or purposes for which the corporation was created, above stated, unless it could be predicated upon the duty of the council to provide for "the public safety."

The time, manner and condition under which the natural and lawful rights and privileges of the citizen may

be interfered with, and restrained, by public law or ordinance, for the protection of public safety, for the prevention of disturbances, the commission of nuisances, or threatened, tangible public or private mischief, was clearly and logically shown and expressed by Mr. Chief Justice Campbell in *Frazee's* case in the supreme court of Michigan, (30 N. W. Rep. 72), wherein that eminent jurist says:

"It has been customary from time immemorial, in all free countries, and in most civilized countries, for people who are assembled for common purposes to parade together by day or reasonable hour at night with banners and other paraphernalia, and with music of various kinds. These processions for political, religious and social demonstrations are resorted to for the express purpose of teaching unity of feeling and enthusiasm, and frequently to produce some effect on the public mind by the spectacle of union and numbers. They are a natural product and exponent of common aims and valuable factors in furthering them. They are only found to any appreciable extent in places having collected inhabitants, for spectators are generally as important as members. They are among the incidental conditions of city life and are as much to be expected on suitable occasions as any other public meeting and not necessarily any more dangerous. They are, however, capable of perversion to bad uses, and when so preverted, may be dangerous. When people assembled in riotous mobs and move for purposes opposed to private or public security, they become unlawful and their members and abettors become punishable. These dangers are as well known as the customs themselves are, and are sometimes very great dangers. There may be times and occasions when such assemblies may for a while be dangerous in themselves because of inflammable conditions among the population. All of these things are as ancient as the law and are generally within reach of the law, unless the law is, for the time, suspended by military necessity. During all this period

of public history cities have existed and had powers of local administration. But it has never been supposed that they needed or ought to possess any repressive power over these movements which was not subservient and subsidiary to the general legal scheme of government.

"It is only when political, religious, social or other demonstrations create public disturbances or operate as nuisances or create or manifestly threaten some tangible public or private mischief that the law interferes. And, when it interferes, it does so because of the evil done, or apparently menaced, and not because of the sentiments or purposes of the movements, if not otherwise unlawful; and things absolutely unlawful are not made so by local authority, but by general law. It is lawful to provide for dealing with the mischief, but it is not lawful to go beyond reasonable measures and precaution in anticipating it. Private liberty and public tranquility and security must both be kept in view."

The case in which Judge Campbell thus so clearly defined the limit of municipal legislative interference with private right and private liberty, was one in all respects identical with the case at bar. There, as here, an ordinance had been enacted, the aim and purpose of which was to interfere with, if not to suppress, the practices of the religious organization known as the Salvation Army. The city of Grand Rapids had passed an ordinance which was as follows:

"No person or persons, association or organization shall march, parade, or drive in or upon or through the public streets of the city of Grand Rapids, with musical instruments, banners, flags, torches, flambeaux, or while singing or shouting, without having first obtained the consent of the mayor or common council of said city. Funeral and military processions, however, shall not be subject to the foregoing provisions of this section. But such processions, as well as those having a permit or

consent of the mayor or common council, when using the public streets of said city, shall conform to such directions as the mayor or chief of police may give in relation to the streets to be used and the portion thereof to be occupied by them in relation to the manner of its use."

The petitioner, in that case, as in this, was a member of the Salvation Army, and was arrested for a violation of said ordinance. The charge was, that the petitioner "Did then and there parade in, upon and through the public streets of the city of Grand Rapids, to-wit: Canal street and Pearle street, with musical instruments, banners and flags, while singing and shouting, without having first obtained the consent of the mayor or common council of the city of Grand Rapids, contrary to said ordinance."

In proceedings, by *habeas corpus*, the supreme court declared the ordinance to be void and discharged the prisoner from arrest.

An ordinance of the city of Wellington, Kansas, in all material respects identical with the one we are considering, was, by the supreme court of that state, held to be void, upon the ground that it was of doubtful delegated power, was unreasonable, did not operate upon conditions and persons uniformly and impartially, and that it contravened common rights. (*Anderson v. City of Wellington*, 40 Kan. 173).

We have been cited, by counsel for respondent, to the case of *City of Chariton v. Fitzsimmons*, (54 N. W. Rep. 146), as holding an ordinance similar to that which we are considering to be valid. In that case, the contention was, and the decision of the supreme court of Iowa was, upon another point involved in this case, and which we have not yet considered, and the ordinance in

question in that case was materially different from the one we are considering. That court held that:

"An ordinance of a city prohibiting the collection and marching of crowds and processions and the making of noise with musical instruments and otherwise, on the streets and sidewalks, so as to obstruct travel, frighten horses, interfere with business or disturb others, is not unreasonable and invalid, because it makes it the duty of the mayor or city marshal first to order the offenders to desist, and provides that the failure or refusal of any person or persons to promptly obey such order is a misdemeanor, since the gravamen of the offense is the commission of the prohibited act and not the disobedience of such order."

This court would not be inclined to hold, nor does it herein hold, that an ordinance which prohibited acts upon a public street that frightened horses, obstructed travel or interfered with business would be void, as unreasonable. The ordinance we are construing does not purport to prohibit such acts, nor was there any contention in the Iowa case that the ordinance in question was unreasonable and therefore void because of its prohibitory provisions. The question in contention there, and one also in contention in this case, we do not deem it necessary to discuss; namely, whether an ordinance prohibiting certain acts, and otherwise valid, is invalid because it makes it the duty of some officer of the city first to order the offenders to desist, and provides that the failure or refusal to promptly obey such order is a misdemeanor. Although we are not prepared to concur with the conclusion of the Iowa court, that the gravamen of the offense in such cases is the commission of the prohibited act and not the disobedience of such order, especially when no criminality attaches to the commission of the act, until the order forbidding its performance has been made and

disregarded; for until such order has been given, the act may be lawfully performed.   And we are not prepared to say that it is a reasonable regulation which vests the power, arbitrarily, in the chief of police or city marshal, to determine when and upon whom the penal ordinances of the city shall become operative.

So long as there have been municipal codes, so long as cities have existed, the use of public streets for processions, for the movement of bodies of the people, whether organized as political, religious or social organizations, has been recognized as a proper and lawful use of such streets.   And the fact that such gatherings and processions embrace the use of musical instruments has never distinguished their rights of use and occupancy of the streets.   And such right cannot be abrogated, taken away or restricted, unless abused, and such abuse amounts to an interference with a paramount right common to all; or is exercised in such manner as to interfere with or subvert some purpose for which the corporation is created and which it is their duty to protect.   A city implies a large aggregation of people.   The use of its streets contemplates, not quietude and repose, but the noise, bustle and confusion, incidént to the transaction of the lawful business of the people and their lawful and harmless amusements and recreations, pleasures and devotions. These are but incidents of a city's life.

The tendency of American thought and action is towards association for the accomplishment of good purposes; hence, we see a large portion of our people associated in the various organizations for the promotion of public good, the betterment of mankind and the alleviation of its miseries.   Every city has its charitable, benevolent, and religious associations, to say nothing of the great

political organizations whose aim is for the betterment of our system of government. Certainly, associations like Masonic, Odd Fellows, Knights of Pythias, Grand Army of the Republic, and others engaged in charitable and benevolent work, have always been recognized as having the right to use, for lawful purposes, the public streets for whose improvement and maintenance they are taxed; the use of music has been deemed, if not necessary, at least a useful auxiliary in bringing in and keeping members within these organizations, and their parades and processions upon the public streets with music as tending to the accomplishment of the ends and purposes for which they are organized, and their right, in this respect, has never been sought to be abridged. And we can find nothing in our system of government which warrants legislatures or courts in discriminating between such associations, and an association which, animated by the same love of humanity, seeks its betterment through the precepts and practices of religion.

We hold this ordinance to be void for the reasons that if the legislature had the power to expressly authorize the municipality to enact it, which we do not and cannot concede, no such power has been attempted to be delegated by the law under which the city was organized, and the power to enact it cannot be inferred from any power expressly granted; that it was not an essential indispensable power required to carry into effect any of the purposes for which the city was created. That it was not reasonable nor consistent with the general policy of our laws; that it was oppressive and in contravention of common right.

Counsel for respondent further contend that if the ordinance is void, yet, the petitioner is not entitled to

discharge from imprisonment in a proceeding by *habeas corpus;* that petitioner should have submitted to trial before the police judge and presented the question of the validity of the ordinance by appeal.    This position is not tenable.    It is true tnat *habeas corpus* is not a proper remedy in cases where one is imprisoned under process which may be avoided because of irregularity or error, and that the only remedy in such cases is by appeal or proceedings in error; but where there is an entire want of jurisdiction to issue the process, *habeas corpus* is the proper remedy, and no court has jurisdiction to issue a warrant where there is no law or ordinance making the act complained of unlawful.    This proposition is too elementary to require the citation of authorities.

For the reasons herein stated, the return of the respondent is held to be insufficient and the petitioner is ordered to be discharged from arrest.

All the Justices concurring.