Decided August 31, 1897.

EX PARTE TICE.

[49 Pac. 1038.]

32 179
45 87

HABEAS CORPUS—VOID AND VOIDABLE PROCESS.—Where it is conceded, in a *habeas corpus* proceeding, that the commitment emanated from a court of competent authority, having jurisdiction of the person and subject matter, the only question is whether the process is void for illegality: *Barton* v. *Saunders*, 16 Or. 51, approved.

TRIAL—DISCHARGING JURY ON SUNDAY.—A court cannot discharge a jury on Sunday in consequence of their failure to agree on a verdict, for section 208, Hill's Ann. Laws, providing that "while the jury are absent the court may adjourn from time to time, in respect to other business, but it is nevertheless to be deemed open for every purpose connected with the cause submitted to the jury till a verdict is rendered or the jury discharged," is limited by the declaration of section 928 that "no court can be opened, nor can any judicial business be transacted on a Sunday," except certain kinds of business that do not include discharging a jury.

CRIMINAL LAW—CONSENT OF DEFENDANT.— In a criminal case a defendant cannot waive an objection that a judicial proceeding was in violation of a statute; the public are interested in having the laws complied with, and the consent of the defendant cannot confer power to do what the statute prohibits.

CONSENTING TO DISCHARGE OF JURY ON SUNDAY.— In a criminal case the authority to discharge the jury on Sunday because of their failure to agree on a verdict cannot be conferred by the consent of defendant, the act being in contravention of Hill's Ann. Laws, § 928.

WHEN JEOPARDY ATTACHES.— Within constitution, article I, § 12, providing that "no person shall be put in jeopardy twice for the same offense," jeopardy attaches when the jury is impaneled and sworn : *State* v. *Steeves,* 29 Or. 85, approved.

From Multnomah: E. D. SHATTUCK, Judge.

*Habeas corpus* proceeding by Jonathan Tice to be delivered from the custody of William Frazier, sheriff. The writ was denied and petitioner appeals.

REVERSED.

For appellant there was a brief over the name of *Woodward & Palmer,* with an oral argument by *Mr. John H. Woodward.*

For respondent there was a brief over the names of *Chas. F. Lord,* district attorney, and *Daniel J. Malarkey,* with an oral argument by *Mr. Malarkey.*

MR. CHIEF JUSTICE MOORE delivered the opinion

This is a special proceeding by Jonathan Tice against William Frazier, as sheriff of Multnomah County, to inquire into the cause of his imprisonment, and to be relieved therefrom. The facts are that plaintiff was indicted, tried, and convicted of the crime of forgery; but the judgment thereon

was reversed on appeal, and a new trial ordered: *State* v. *Tice*, 30 Or. 457 (48 Pac. 368). Upon the new trial a jury was impaneled and sworn, the evidence taken, and the cause submitted on Saturday, June 26, 1897; and on the next day, no verdict having been reached, the court, by an order, discharged the jury, and committed plaintiff to the custody of defendant pending a retrial. Thereafter, plaintiff, claiming that the discharge of the jury on Sunday was not authorized by law, and that its order in that respect was equivalent to a verdict of acquittal, moved the court to be discharged; and, the motion being denied, he thereupon sued out a writ of *habeas corpus*, which was served on defendant, who, for his return, certified that he held plaintiff in prison by virtue of said commitment. A reply alleging the facts hereinbefore stated having been filed, a trial was had, resulting in an order dismissing the proceeding, and remanding plaintiff to the custody of defendant, from which judgment plaintiff appeals.

Counsel for plaintiff contend that, in consequence of the error complained of, their client is unlawfully restrained of his liberty; that he cannot again be put in jeopardy, and the discharge of the jury on Sunday affords a bar to any further prosecution of the charge stated in the indictment; that, such being the case, the sheriff has no legal authority to imprison him, and hence the court erred in dismissing the proceeding and remanding him to the custody of the officer: while counsel for defendant maintain that the act of discharging the

jury is ministerial only, and therefore not pro-
hibited on a non-judicial day; that the statute con-
fers upon a trial court the right to receive the
verdict of a jury on Sunday, and this grant of
power carries with it the corresponding right to
discharge a jury on that day; that, the record
being silent, it must be presumed that the jury
was discharged in pursuance of plaintiff's consent
thereto, which now estops him from complaining
of such action; and that, if all the points con-
tended for by plaintiff be conceded, the order re-
straining him of his liberty is not void, and hence
*habeas corpus* is not the remedy, and is ineffectual
to procure his discharge.

It being conceded that the commitment under
which plaintiff is restrained of his liberty emanated
from a court of competent authority, having juris-
diction of the subject matter and person, the only
question presented in a *habeas corpus* proceeding is
whether such process is void for illegality: Hurd
on Habeas Corpus, 333; Church on Habeas Cor-
pus, § 253; 1 Bishop's New Criminal Procedure,
§ 821. "If the judgment," says ALLEN, J., in
*People* v. *Liscomb*, 60 N. Y. 559 (19 Am. Rep. 211),
"is merely erroneous,— the court having given a
wrong judgment when it had jurisdiction,— the
party aggrieved can only have relief by writ of
error, or other process of review. He cannot be
relieved summarily by *habeas corpus.*" In *Ex parte
Ruthven*, 17 Mo. 541, the facts show that the peti-
tioner was put upon his trial for murder; and, the
cause being submitted to the jury, they were, in a

few hours after retiring, discharged, without the
prisoner's consent, and in his absence, without hav-
ing agreed upon a verdict. Contending that he
could not again be put in jeopardy for the same
offense, he moved the court to be discharged from
custody under the indictment, and, the motion being
denied, he sought to review the alleged error by
*habeas corpus*; but it was held that the means
adopted was not the proper remedy for the error
complained of. In *Steiner* v. *Nerton*, 6 Wash. 23
(32 Pac. 1063), the plaintiff was indicted, and, upon
entering a plea of not guilty, a jury was empaneled
and sworn, and the trial commenced, during which
the court, upon motion, and against plaintiff's ob-
jection, discharged the jury, quashed the indict-
ment, and permitted an information to be filed,
holding the plaintiff to bail, in default of which to
be imprisoned in the county jail. Plaintiff, con-
tending that his restraint under said commitment
was illegal, because jeopardy had attached under the
indictment, and that he could not again be put in
peril for the same offense, sought to review the act
of the court by *habeas corpus*, but it was held that
the proceeding was ineffectual for that purpose.
Dunbar, C. J., in deciding the case, says: "If the
petitioner has been before in jeopardy for the same
offense, that is a proper plea in bar, to be tried by
the court, and from the decision of which an appeal
would lie to this court." To the same effect, also,
see *In re Gribben*, 5 Okl. 379 (47 Pac. 1074).

But in each of these cases, while the doctrine of
former jeopardy was involved, it was not contended

that the order or judgment complained of was void, and hence it was held that *habeas corpus* was not the proper remedy to correct any irregularity occurring at the trial. It has been repeatedly held that, unless the judgment under which a person is committed to the custody of an officer is void, the court will not, on a *habeas corpus* proceeding, discharge the prisoner, and that irregularities appearing in the record are insufficient to obtain his release: *Fleming* v. *Bills*, 3 Or. 286; *Barton* v. *Saunders*, 16 Or. 51 (8 Am. St. Rep. 261, 16 Pac. 921); *Wright* v. *State*, 5 Ind. 290 (61 Am. Dec. 90); *Wright* v. *State*, 7 Ind. 324; *Commonwealth ex rel* v. *Deacon*, 8 Serg. & R. 72; *State ex rel* v. *Sheriff*, 24 Minn. 87; *Perry* v. *State*, 41 Tex. 488; *Pitner* v. *State*, 44 Tex. 578; *State ex rel* v. *Klock*, 45 La. Ann. 316 (12 South. 371); *Ex parte Bizzell*, 112 Ala. 210 (31 L. R. A. 678, 21 South. 371); *In re Courtney*, 49 La. Ann. —— (21 South. 729); *Ex parte Gibson*, 31 Cal. 619 (91 Am. Dec. 546); *Ex parte McCullough*, 35 Cal. 98; *Ex parte Granice*, 51 Cal. 375; *Ex parte Wilson*, 114 U. S. 417 (5 Sup. Ct. 935); *Ex parte Hays*, 15 Utah, 77 (47 Pac. 612); *People* v. *Allen*, 160 Ill. 400 (43 N. E. 332); *Ex parte Keeler*, 45 S. Car. 537 (55 Am. St. Rep. 785, 23 S. E. 865); *Ex parte Evans*, 42 W. Va. 242 (24 S. E. 888); *In re Greenwald*, 77 Fed. 590; *In re Eckart*, 166 U. S. 481 (17 Sup. Ct. 638). In a note to *Ex parte Crouch*, 20 Central Law Journal, 169 (112 U. S. 178, 5 Sup. Ct. 96), it is said: "The rule is that if the error by reason of which it is sought to overthrow the judgment is not of such a character as renders it absolutely void, the defend-

ant imprisoned thereunder will not be relieved on *habeas corpus*, but will be driven to seek his remedy in a direct proceeding, by appeal, writ of error, or otherwise, to set aside the same, either in the court in which it was rendered, or in a court having jurisdiction to review the proceedings of such court. If the error be an error of fact, he cannot bring *habeas corpus*, but must resort to a writ of error *coram nobis* in the court which rendered the judgment." See the great array of authorities collated in support of this note. In a note to the case of *Commonwealth* v. *Lecky*, 26 Am. Dec. 37, it is said: "If the court rendering the judgment or issuing the process had jurisdiction of the subject matter and of the person, and was competent to render such judgment or issue such process under some circumstances, the inquiry will not be carried further, however erroneous the proceedings may have been."

Applying this rule to the case at bar, it remains to be seen whether the act complained of is void. We do not deem it necessary to discuss the question whether discharging the jury is a ministerial or a judicial act, for the right of the court to dismiss them necessarily depended upon its consideration that they could not agree upon a verdict; and this conclusion was an exercise of judicial discretion, and being so, is it void because it was performed on the Christian Sabbath? "Sunday," says Mr. Freeman in his work on Judgments (4th Ed. § 138), "is *dies non juridicus*, and by the common law all judicial proceedings which take place on that

day are void." From the establishment of the
Christian religion until the beginning of the sixth
century Sunday was regarded in all Christian
countries with no greater favor or veneration than
any other day of the week, and justice was admin-
istered on all days alike; but in A. D. 517 a canon
of the church prohibited the profanation of Sunday,
and in England, about 500 years thereafter, the
laws of Edward the Confessor, emphasizing this
prohibition, ordered that from 3 in the afternoon
of all Saturdays till Monday morning the peace of
God and the holy church should be kept through-
out the kingdom: 3 Blackstone's Commentaries,
*276. Mr. Ringgold, in his Law of Sunday (page
153), criticising the assertion so frequently made in
this country that Sunday, by reason of these canons
of the church, became *dies non juridicus* at common
law, says: "But it is evident that Sunday was not
a *dies non juridicus* by English common law, as
adopted in America, because that law is always, in
this connection, distinguished from English statu-
tory law; and Sunday has derived its character as
*dies non juridicus* in England from certain easily
cited statutes, whose regulations were borrowed from
the ecclesiastical or canon law, and whose enact-
ment was one of the many results of that English
union of church and state which is nominally re-
pudiated among our people." Sir William Black-
stone, in speaking of the laws of Edward the Con-
fessor, says: "These, in short, are the laws which
gave rise and original to that collection of maxims
and customs which is now known by the name of

the 'common law.' * * * Whence it is that in
our law the goodness of a custom depends upon its
having been used time out of mind; or, in the
solemnity of our legal phrase, time whereof the
memory of man runneth not to the contrary": 1
Blackstone's Commentaries, *67. In defining this
phrase the learned commentator says: "Now, time
out of memory hath been long ago ascertained by
the law to commence from the beginning of the
reign of Richard the First": 2 Blackstone's Com-
mentaries, *31. It will thus be observed that Sun-
day, as *dies non juridicus*, may have had its origin
in a statute, thus depriving it of the strict appella-
tion of *lex non scripta*; but the act in question is
nevertheless so ancient that "the memory of man
runneth not to the contrary," and hence the prohi-
bition of judicial acts on that day may now be de-
nominated a part of the common law of England,
which the early settlers brought to our shores as
an inheritance from the mother country.

It has been repeatedly intimated that Sunday at
common law was *dies non juridicus*, and also held
that any judicial proceeding performed on that day
was void: *Van Vechten* v. *Paddock*, 12 Johns. 178 (7
Am. Dec. 303); *Pearce* v. *Atwood*, 13 Mass. 324;
*Storey* v. *Elliot*, 8 Cow. 27 (18 Am. Dec. 423); *Haynes*
v. *Sledge*, 2 Port. (Ala.) 530 (27 Am. Dec. 665);
*Johnson* v. *Day*, 17 Pick. 106; *Kepner* v. *Keefer*, 6
Watts, 231 (31 Am. Dec. 460); *Chapman* v. *State*, 5
Blackf. 111; *Davis* v. *Fish*, 1 G. Greene, 406 (48
Am. Dec. 387); *Pulling* v. *People*, 8 Barb. 384; *Blood*
v. *Bates*, 31 Vt. 147; *Merritt* v. *Earle*, 31 Barb. 38;

*Kiger* v. *Coats*, 18 Ind. 153 (81 Am. Dec. 351); *Scam-man* v. *City of Chicago*, 40 Ill. 146; *State* v. *California Mining Company*, 13 Nev. 203; *City of Parsons* v. *Lindsay*, 41 Kan. 336 (13 Am. St. Rep. 290, 3 L. R. A. 658, 21 Pac. 227 and notes). Such being the rule at common law, the right to perform any judicial act on Sunday must be sought for in the statute conferring it, which, like all other acts in derogation of the common law, should be strictly construed. The legislative assembly on October 11, 862, adopted a code of civil procedure, which contained the following provision: "The courts of justice may be held, and judicial business may be transacted, on any day, except as provided in this section. No court can be opened, nor can any judicial business be transacted on a Sunday, on the first day of January, on the fourth of July, on Christmas day, on a day on which a general election is held, or on a day appointed by the executive authority of the United States or of this state, as a day of fast or thanksgiving, except for the following purposes: (1) To give instruction to a jury then deliberating on their verdict; (2) to receive a verdict or discharge a jury; (3) for the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature": General Laws 1843–1872, chapter XI, title VII, § 899. This section was amended October 25, 1880, by adding May 30 to the list of legal holidays: Laws 1880 page 45. The legislature on February 21, 1887, further amended this section by adding to the list of non-judicial days the first Saturday in June, and

by changing the second subdivision so as to read: "To receive the verdict of a jury": Laws 1887, page 86. And as thus amended it appears in Hill's Ann. Laws as section 928. This section was also amended on February 21, 1893, in reference to the holidays, but no change was made in said subdivision 2. It will thus be seen that a court may receive the verdict of a jury on Sunday, but without their agreement or some immediate necessity, it is powerless to discharge them on that day.

It is insisted, however, by counsel for defendant, that section 208, Hill's Ann. Laws, which provides that "while the jury is absent the court may adjourn from time to time, in respect to other business, but it is neverthless to be deemed open for every purpose connected with the cause submitted to the jury until a verdict is rendered or the jury discharged," authorizes a court to dismiss a jury on a nonjudicial day; and in support of this doctrine they cite the cases of *People* v. *Odell*, 1 Dak. 197 (46 N. W. 601); *Meece* v. *Commonwealth*, 78 Ky. 586, and *Territory* v. *Milligan*, 2 Okl. 154 (37 Pac. 1059), where it is held, under similar statutes, that a court may give an instruction to, and receive the verdict of, a jury on Sunday. Sections 208 and 928, Hill's Ann. Laws, were adopted at the same time, and have reference to the same subject matter; and, such being the case, they must be construed in *pari materia*. It is possible, however, that a construction of the former section without the aid of the latter might lead to the conclusion reached by the courts in the cases relied upon;

but evidently the legislative assembly, in adopting a code of civil procedure, did not so regard section 208; for, if such had been the case, there would have been no need of enacting section 928, which, in our judgment, limits the power conferred by section 208.

The contention that it must be presumed, in the absence of a recital in the record to the contrary, that plaintiff consented to the discharge of the jury, is without merit; for, if he could agree to their discharge on Sunday, he could with equal propriety consent to be tried in a criminal action on that day; but as the public has an interest in the observance of Sunday as a day of rest, and a right to see that it shall not be desecrated except in cases of urgent need, plaintiff could not waive the public right, and hence the presumption invoked is not applicable to the facts involved. "A party cannot waive the objection to acts done, or contracts entered into, in violation of Sunday laws": 28 Am. & Eng. Enc. Law (1st ed.), 533. These rules show that the court could not sit on Sunday, except upon certain conditions, none of which existed, and hence the order discharging the jury for the cause assigned was *coram non judice* and void: *Jackson* v. *State*, 102 Ala. 76 (15 South, 351).

The organic law of this state, emphasizing a maxim of the civil law which was also embodied in the elements of the common law, declares that "no person shall be put in jeopardy twice for the same offense": Constitution of Oregon, article I, § 12. While there is some conflict of judicial opinion

as to when jeopardy attaches, it has been held by
this court that it attaches when the jury is impan-
eled and sworn: *State* v. *Steeves*, 29 Or. 85 (43 Pac.
947). In *Hilands* v. *Commonwealth*, (Pa. Sup. Ct.)
2 Atl. 70, MERCUR, C. J., asks the following ques-
tion: "At what step in the prosecution is a person
put in jeopardy, to which he shall not be subjected
the second time for the same offense?" and an-
swers the inquiry by saying: " Undoubtedly, when
the trial begins in which he is charged with a
capital offense. It is so charged as soon as the
twelve jurors are duly impaneled and sworn. They
are sworn well and truly to try and true deliver-
ance make between the commonwealth and the
prisoner whom they have in charge. The trial has
then begun. The prisoner stands before them as
his judges, with his life in their hands." " Noth-
ing," says OKEY, J., in *Mitchell* v. *State*, 42 Ohio
St. 383, "is more clearly settled than that jeopardy
attaches the moment the jury is sworn, and that
if the jury be thereafter discharged without a ver-
dict, when no legal ground of discharge is shown,
the effect will be precisely the same as if a ver-
dict of acquittal had been rendered." In *Ex parte*
White, 15 Nev. 146 (37 Am. Rep. 466), the peti-
tioners were arrested and taken before a justice of
the peace on a Sunday, and charged with having
committed a misdemeanor, to which they pleaded
guilty; and, having been sentenced on that day to
pay a fine and be imprisoned, they sued out a
writ of *habeas corpus*; and HAWLEY, J., in dis-
charging them, says: "In the present case the jus-

tice, in receiving the plea, passing sentence, and rendering judgment, acted in the exercise of his powers as a justice of the peace. In this respect he acted without any authority of law. The judgment rendered by him is utterly null and void." In *Maden* v. *Emmons*, 83 Ind. 331, the petitioner was indicted for larceny, a jury impaneled and sworn to try him, the evidence taken, and the case submitted; but, after retiring, they discovered that one of their number was not a resident of the county, whereupon they went into the courtroom, in the absence of the judge and of the petitioner, and, having obtained the advice of the deputy clerk, they dispersed without agreeing upon a verdict. The petitioner, contending that jeopardy had attached, and that in consequence of the act of the jury he was entitled to be discharged, applied for a writ of *habeas corpus*, and, his petition being denied, he appealed; and, in reversing the judgment, ELLIOTT, J., says: "If a jury is discharged by the court without the consent of the accused, it operates to release him, unless there are reasonable grounds for the action of the court. Even where such grounds do exist the prisoner must be present when the order discharging the jury is made: *State* v. *Wilson*, 50 Ind. 487. If the jury is discharged before the expiration of a reasonable time, it results in the release of the accused: *State* v. *Leunig*, 42 Ind. 541. A jury cannot of their own volition do that which the court cannot authorize them to do. The separation of the jury in this case was wrongful, and must, under the circum-

stances, be held to entitle the appellant to a discharge."

In *State* v. *McGimsey*, 80 N. C. 377 (30 Am. Rep. 90), the defendant was tried for murder; and, the cause having been submitted, the jury retired on Saturday night, and on Sunday evening, not having agreed upon their verdict, were discharged, and the prisoner remanded to jail until the next term of court. A writ of *certiorari* was thereupon sued out, and, the record being sent up, the supreme court discharged the prisoner. Ashe, J., in rendering the decision, says: "The question presented for the consideration of this court is whether the court below had the right to discharge the jury who were empaneled in the case, and hold the prisoner for another trial. It is a maxim of the common law that no person shall be twice put in jeopardy of life or limb; and this principle, founded on humanity, has been incorporated in the constitution of the United States. It has been adopted and acted upon in our courts from the foundation of the government to the present time. We are aware that in many of the states there has been a strong tendency to ignore the maxim of the common law, and submit the question to the discretion of the courts. But in this state, beginning with *Garrigues' Case*, in 1795, reported in 1 Haywood (N. C.) 241, through a current of decisions down to the case of *State* v. *Honeycutt*, 74 N. C. 391, the principle of the common law has been steadily kept in view and adhered to, with some relaxation of the rule: *In re Spier*, 1 Dev. 491; *State* v. *Ephraim*,

*32 Or.—13.*

2 Dev. and B. 162; *State* v. *Prince*, 63 N. C. 529;
*State* v. *Alman*, 64 N. C. 364; *State* v. *Jefferson*,
·66 N. C. 309. By these and other decisions of this
court it has been uniformly maintained that where
a jury has been charged in a capital felony, and
the prisoner's life put in jeopardy, the court has no
power to discharge the jury and hold the prisoner
for a second trial, except in cases of absolute neces-
sity. These cases of necessity form exceptions to
the general rule, and, in every case where the court
undertakes to exercise the power of discharging a
jury in a capital case, it will be error, unless
brought within one of the exceptions. The inabil-
ity of a jury to agree upon a verdict has been
recognized by our courts as an exception to the
general rule." In *State* v. *Shaffer*, 23 Or. 555 (32
Pac. 545), it is held that the inability of a jury to
agree upon a verdict, after a reasonable time there-
for has expired, affords such a necessity as will
warrant their discharge without defendant's consent,
and that their dismissal under such circumstances
cannot be pleaded in bar of another prosecution.
To the same effect, see *State* v. *Reinhart*, 26 Or.
466 (38 Pac. 822). But this rule can furnish no
reason for the discharge of a jury on Sunday in
consequence of their failure to agree upon a ver-
dict; and the court, having no authority to sit on
that day, was without jurisdiction, and hence its
order was of no binding force, in view of which
the separation of the jury was as though they had
voluntarily dispersed. In the case at bar the court
cannot consider the question of the guilt or inno-

cence of the plaintiff, who, having invoked the application of this constitutional guaranty, is entitled to the relief it affords; and hence it follows that the judgment is reversed and the cause remanded, with instructions to discharge the prisoner.

REVERSED.

Decided August 2, 1897.