Ex parte WELBORNE WESTELLISON.

No. A-6634. Opinion Filed Oct. 8, 1927.
(259 Pac. 873.)

208

Cruce & Franklin, for petitioner.

Fred E. Suits, M. W. McKenzie, and Bliss Kelly, for respondent.

EDWARDS, J. This is an original proceeding in habeas corpus. The petitioner alleges that he is unlawfuly restrained by the chief of police of Oklahoma City; that the cause of said restraint is that on May 6, 1927, petitioner was engaged as a newsboy in selling the Oklahoma News, a newspaper, in Oklahoma City; that he was arrested charged with a violation of Ordinance No. 3151 of said city, in announcing in a loud voice the contents of said paper, was convicted by the police judge and fined $5.00 and costs.

It is contended that said ordinance is unconstitutional and void for various reasons enumerated in said petition. Those may be summarized into two principal contentions: First. That said ordinance is void because the city council was without authority under the statutes to enact and pass the same, and that it is an unreasonable, unnecessary, and arbitrary attempted exercise of the police power. Second. That said ordinance is void because its provisions and meaning are too indefinite, vague, and uncertain to inform the public what acts constitute a violation thereof.

The response admits the ordinance, the fine, and imprisonment, as alleged, and denies that the same is unconstitutional and void.

The writ of habeas corpus cannot be used to test the regularity of a proceeding as by an appeal. To entitle a petitioner to be released on habeas corpus, the judgment must be void and not merely erroneous. Ex parte Barnette, 29 Okla. Cr. 80, 232 P. 456; Ex parte Hollings-

head, 24 Okla. Cr. 131, 216 P. 486; Ex parte Dunn, 33 Okla. Cr. 190, 242 P. 574. But where the constitutionality of an act under which a person has been convicted and is restrained is questioned, its validity may be tested by habeas corpus proceedings. In re Gribben, 5 Okla. 379, 47 Pac. 1074; In re Unger, 1 Okla. Cr. 222, 98 P. 999; McGuire v. Wilkerson, 22 Okla. Cr. 36, 209 P. 445; Ex parte Smith, 135 Mo. 223, 36 S. W. 628, 33 L. R. A. 606, 58 Am. St. Rep. 576.

We are not impressed with the argument that the ordinance is void for the reason that the city is without power to enact it. For, while it is generally said that municipalities can exercise only such powers as are expressly delegated to them by the Legislature, or such as are fairly implied as an incident to the powers expressly granted, yet it would seem to be beyond question that, under the general grant of police power to a city to enact ordinances for the benefit of the health, safety, and welfare of the city, there is at the least an implied grant of power to reasonably restrict unnecessary noises which are, in a sense, a nuisance, an annoyance, or a breach of public order. This was evidently the purpose and intent of the city council in enacting the ordinance under consideration.

The further contention that the ordinance, being penal in its nature, is void as being too indefinite and uncertain to define a criminal offense presents a more serious question. There have been a great many decisions and no little discussion in the textbooks stating and applying the rules of statutory construction. It is not necessary to attempt to state these various rules, nor to quote or cite the decisions at length. Formerly it was said that municipal ordinances should be more liberally construed than penal statutes generally, but later authorities appear to make no distinction and to hold quite generally that penal ordinances, like penal statutes, are

to be construed strictly. 7 McQuillin on Municipal Corporations, § 814, and authorities cited. The construction is not to be unreasonable or forced, but the language used cannot be extended by implication to cover acts not clearly within its terms, nor can a prohibition not expressed in the act be read into it by implication. State v. Prather, 79 Kan. 513, 100 P. 57, 21 L. R. A. (N. S.) 23, 131 Am. St. Rep. 339; State v. Norfolk Southern Railway Co., 168 N. C. 103, 82 S. E. 963, L. R. A. 1915B, 329; New York v. Fredericks, 206 N. Y. 618, 100 N. E. 419.

The same presumption applies in the matter of municipal ordinances as to statutes. That is, they are presumed to be constitutional, and the courts should bring to their aid all the appropriate rules of construction before declaring them unconstitutional. Ex parte Hunnicutt, 7 Okla. Cr. 213, 123 P. 179; State v. Coyle et al., 7 Okla. Cr. 50, 122 P. 243; Ex parte Whitehouse, 3 Okla. Cr. 103, 104 P. 372; Ex parte Lucas, 33 Okla. Cr. 407, 243 P. 990; 25 R. C. L. 1084, § 203.

On the other hand, a penal statute must be sufficiently definite so that a person of ordinary understanding will be able to know what acts are forbidden and when he has committed an offense. Missel v. State, 33 Okla. Cr. 376, 244 P. 462; Buckles v. State, 5 Okla. Cr. 109, 113 P. 244; Ex parte Hunnicutt, supra; State v. Lawrence, 9 Okla. Cr. 16, 130 P. 508; Tozer v. United States (C. C.) 52 F. 919; United States v. Brewer, 139 U. S. 278, 288, 11 S. Ct. 538, 35 L. Ed. 190; United States v. Sharp, Pet. C. C. 118, 27 Fed. Cas. 1041.

That portion of the ordinance defining the offense reads as follows:

"Sec. 655. That it shall be unlawful and an offense for any newsboy or any other person selling newspapers upon any thoroughfares, streets, alleys, or private property, of said city in the district bounded by Fourth street on the north, the Atchison, Topeka & Santa Fe Railway

Company on the east, Reno avenue on the south, and Western avenue on the west, to call, yell, or announce in a loud voice the contents of such newspapers, but such persons shall exhibit such newspapers and may announce in an ordinary and usual voice the name of such paper so offered for sale: Provided, that outside of the district hereinabove defined, in the event extra editions other than the regular edition of newspapers are offered for sale, then the sale may be cried out by newsboys in making such sale."

An examination of the ordinance above set out leaves us in doubt as to what was in the mind of the city council. The only part of the ordinance that appears to have any meaning is the following:

"* * * That it shall be unlawful and an offense for any newsboy * * * selling newspapers upon any thoroughfares, streets, alleys, or private property of said city in the district * * * (describing it) to call, yell, or announce in a loud voice the contents of such newspapers. * * *"

That is all that is forbidden, but immediately following this language is permission to such person to exhibit newspapers and to announce in an ordinary and usual voice the name of such paper so offered for sale. But since it has not been forbidden to exhibit such newspapers and to announce the name either in a loud voice or otherwise, the permission is meaningless except on the theory that the city council supposed that they had forbidden this in the preceding part of the ordinance. Following this permission just referred to, there is the proviso that outside the described district newsboys might cry out the sale of extra editions of newspapers. Since there was no prohibition whatever in the territory outside of the described district, this proviso is also meaningless except on the theory that the city council supposed that the preceding part of the ordinance made some prohibition in this outside territory, and they desired by a proviso to give permission to cry out extra editions. We

assume the city attorney or counselor must have been on a vacation when this ordinance was prepared, and that it was drafted by some one not familiar with the construction and meaning of penal statutes.

Various other incongruities are pointed out, among them the announcing of the name of the newspaper offered for sale or any description of it other than the calling its contents is not forbidden. This, it is argued, could not have been the intention of the city council, since calling the name and describing the newspaper would constitute as great a nuisance as the announcing of its contents, and that presumably it was the "loudness" of the calling rather than what was called that the ordinance was intended to inhibit. This appears to be logical, since the latter part of the ordinance permits the exhibiting of the newspaper and the announcement of the name of such paper in an "ordinary" and "usual" voice. An ordinance should be construed according to the effect and the legislative intent. The legislative intent, however, must be gathered from the ordinance itself, and we are not able to ascertain just what was the legislative intent.

The further contention is stressed that the term "loud" as used in the ordinance is a relative term and is void as fixing no standard upon which to measure the tone of voice and determine whether it is "loud" or "ordinary" and comes within the rule announced in the case of Cook v. State, 26 Ind. App. 278, 59 N. E. 489, where the word "broad" and the word "narrow" are used, which act was by that court held void as indefinite and uncertain, the court saying:

"The meanings of the separate words in the phrases 'narrow-tired wagon' and 'broad-tired wagon' are plain, but the words 'narrow' and 'broad' describe, not certain, but uncertain, comparative widths, and, no standard of comparison being provided by the law, they render the

phrases in which they occur uncertain and indefinite. A particular tire may be broad or narrow, according to the width of another tire or of other tires of different widths with which, for the occasion, it is being compared. In a portion of the statutory description of the offense there is such indefiniteness that it is impossible for the court to say with requisite certainty that the description in the statute corresponds with the definite state of facts shown by the affidavit" (citing, among other authorities, Hewitt v. Board of Medical Examiners, 148 Cal. 590, 84 P. 39, 3 L. R. A. [N. S.] 896, 113 Am. St. Rep. 315, 7 Ann. Cas. 750).

The definition of a noise made by the voice as "loud" or "ordinary" and "usual" is indefinite and uncertain; there is no standard of comparison or definite character fixed such as to "annoy the public generally," or as to "disturb the peace," or "to the annoyance of the inhabitants," or like terms.

This court in the case of Stewart v. State, 4 Okla. Cr. 564, 109 P. 243, 32 L. R. A. (N. S.) 505, sustained an information charging accused with having "unlawfully, willfully and wrongfully committed divers acts of yelling, hollering, and uttering loud and vociferous language, thereby grossly disturbing the public peace of said community," the information being predicated upon section 2650, Wilson's Statutes 1903 (section 2782. Snyder's Compiled Laws; section 2287, Comp. St. 1921). This statute is made sufficiently definite by defining the offensive act as one that—

"* * * grossly injures the person or property of another, or which grossly disturbs the public peace or health, or which openly outrages public decency and is injurious to public morals. * * *"

See Hewitt v. Board, etc., supra.

In order to be free from the objection of indefiniteness and uncertainty, some standard should be fixed for determining at what point the quality of "loud" should

apply. Without such standard it is impossible to say, as a matter of law, when a voice is "loud" or "ordinary." The usual standard fixed, as stated, is such as "disturbs the peace or public decorum," or "annoys the inhabitants," or such similar term.

For the reasons assigned, the writ is awarded and petitioner discharged.

DOYLE, P. J., and DAVENPORT, J., concur.