**MORLAND DEVELOPMENT CO., INC.,
and Newcomb Cleveland, Appellants,**

v.

**CITY OF TULSA, Oklahoma, a municipal
corporation, Appellee.**

No. 49621.

Supreme Court of Oklahoma.

June 26, 1979.
Concurring Opinion June 27, 1979.

Dwayne C. Pollard, William C. Kellough, Blackstock, Joyce, Pollard, Blackstock & Montgomery, Tulsa, for appellants.

Waldo F. Bales, City Atty., Russell R. Linker II, Asst. City Atty., Tulsa, for appellee.

Robert J. Nichols, Tulsa, Counsel, brief amicus curiae, Oklahoma Economic And Legal Research Foundation, Inc.

IRWIN, Vice Chief Justice.

Morland Development Co., Inc., and Newcomb Cleveland (appellants) own a tract of land within the corporate limits of the City of Tulsa (appellee or City). Appellants' land is situated in the flood plain of Mingo Creek, an area subject to periodic flooding. Prior to February 2, 1973, appellants' land was zoned CS, light commercial, a zoning which permitted appellants to conduct land-fill operations.

In 1970, City enacted comprehensive Floodway Zoning Ordinances. In reality, these comprehensive ordinances zoned no land but established the public purpose and procedure for specific floodway zoning. The specific zoning was accomplished by subsequent ordinances referred to as Floodway Supplemental Districts (FD). On February 2, 1973, the FD zoning affecting appellants' property was enacted by the City. Under this FD zoning appellants were not permitted to continue their land-fill operations without the approval of the city engineer. However, appellants continued to conduct their land-fill operations after the FD zoning was enacted without securing the engineer's approval.

In 1975 City commenced proceedings to enjoin appellants from continuing their land-fill operations in violation of the FD zoning ordinance. Appellants, in their answer and counter claim and amendments thereto, requested the court to declare the FD zoning unconstitutional and unenforceable. Appellants also placed in issue the validity of the ordinance as to their property because City failed to give proper notice

of the "change" of zoning as prescribed by 11 O.S.1971, § 405.[1]

The facts were submitted to the trial court without any material dispute and both parties filed motions for summary judgment. The trial court granted City's request for a permanent injunction, and appellants appealed.

Appellants first contend that the FD zoning ordinance was invalid and unenforceable against their property because City failed to comply with the notice requirements of section 405. City contends that the notice requirements of section 405 are not applicable but that 11 O.S.1971, § 404, prescribes the necessary notice in these proceedings. Section 404 provides:

"The legislative body of such municipality shall provide for the manner in which such regulations and restrictions and the boundaries of such districts shall be determined, established and enforced, and from time to time amended, supplemented or changed. However, no such regulation, restriction or boundary shall become effective until after a public hearing in relation thereto, at which parties in interest and citizens shall have an opportunity to be heard. At least fifteen (15) days' notice of the time and place of such hearing shall be published in an official paper or a paper of general circulation in such municipality."

Section 405, supra, provides in part:

"Regulations, restrictions and boundaries of cities and incorporated towns may from time to time be amended, supplemented, changed and modified or repealed. . . .

In addition to the notice provided by § 404 of this title, notice of public hearing of any zoning change shall be given by mailing written notice * * * to all owners of property within a three-hundred-foot radius of the exterior boundary of the subject property * * *."

It is conceded that City complied with the notice requirements of section 404, but no written notice was mailed to appellants as prescribed by section 405. The trial court found that the record did not show there had been a "change" of zoning within the meaning of section 404, and therefore written notice to appellants was not necessary.

City argues that the creation of an expansive floodway zoning area, encompassing many square miles, is the institution of a new comprehensive zoning plan, thus falling under the notice provisions of section 404. Additionally, City points out that compliance with the notice provisions of section 405 which would require written notice to all affected land owners would be costly, time consuming and generally cumbersome to implement.

■ A fair reading of sections 404 and 405 indicates the Legislature intended that zoning in most instances would be a two-step procedure. First, a comprehensive zoning plan would be adopted which would be a matter of general public interest. For a comprehensive plan, section 404 provides for notice to the public at large by publication. This plan, in the area of floodway zoning was first adopted by City in 1970. Under the guidelines therein established, the second phase of the zoning came into being, i. e., separate Supplemental Floodway Districts were created. In February, 1973, City enacted the specific Supplemental Floodway District which rezoned and changed appellants' land from CS to FD. Appellants' land-fill operation did not violate City's zoning ordinance until this FD zoning ordinance was adopted. Under the new ordinance appellants could not conduct their operation unless their plans were approved by the city engineer.

■ Section 405 provides that *in addition* to the notice provided by section 404, "notice of public hearing of any zoning change

---

1. Although our statutes in reference to zoning have been amended since 1971, the 1971 zoning laws govern the issues presented here.

shall be given by mailing written notice * * * to all owners of property * *." We hold that the enactment of the FD zoning order constituted a "change" of zoning and that the notice provisions of section 405 were applicable. The admitted fact in the case at bar is that no written notice of the proposed "change" of zoning was given to appellants. In the absence of such written notice the ordinance may not be enforced against appellants' property.

In *O'Rourke v. City of Tulsa,* Okl., 457 P.2d 782 (1969), we held that an aggrieved party may challenge the constitutionality of a zoning ordinance by petition in the district court without first exhausting his administrative remedies. It is admitted appellants did not seek any administrative relief. Although appellants' argument that the ordinance is invalid because of improper notice is not premised on a constitutional infirmity, it does attack the validity of the ordinance itself. As a prerequisite to the City receiving the requested injunctive relief there must be a valid ordinance prohibiting the activities of the appellants. This notice argument goes to the validity of the ordinance, and appellants were entitled to show that invalidity without seeking administrative relief.

On the basis of the undisputed facts, the specific ordinance zoning the appellants' property as FD was not enacted according to the required statutory notice, and the trial court's judgment in favor of City is in error. Appellants were entitled to summary judgment and injunctive relief from enforcement of this invalid ordinance.

Although raised by Amicus Curiae, this Court will not address the issue of whether a municipality has authority pursuant to the Oklahoma statutes to enact flood plain zoning. Amici Curiae must accept the issues as made and cannot raise constitutional questions not presented by the litigants. *Davis v. McCasland,* 182 Okl. 49, 75 P.2d 1118 (1938); *State v. Ford,* Okl., 434 P.2d 934 (1967).

CERTIORARI GRANTED: DECISION OF THE COURT OF APPEALS VACATED; ORDER OF THE DISTRICT COURT REVERSED; AND CAUSE REMANDED WITH INSTRUCTIONS TO GRANT REQUESTED RELIEF TO APPELLANTS.

LAVENDER, C. J., and HODGES, DOOLIN, HARGRAVE, and OPALA, JJ., concur.

BARNES, J., concurs specially.

WILLIAMS, J., dissents.

BARNES, Justice, specially concurring:

Although I agree with both the result and rationale of the Majority Opinion, I believe the Court should have addressed the threshold question raised in the Amicus Curiae Brief, regarding the power of a municipality to enact flood plain zoning under our present statutory scheme. The argument made was that the City, in enacting flood plain zoning in any form, acted beyond its statutory authority, and therefore acted unconstitutionally.

The issue thus raised was whether, under the power granted it by law, a municipal corporation can enact flood plain zoning. This question is of such great importance that I believe the Court should have addressed it in order to apprise cities that they do in fact have such powers.

In *In re Gribben, 5 Okl. 379, 47 P. 1074 (1897),* and *Mitchener v. City Com'rs of City of Okmulgee, 100 Okl. 98, 228 P. 159 (1924),* this State adopted and adhered to what is commonly called "Dillon's Rule", which provides that municipal corporations possess, and can exercise, the following powers, and no others:

1. Those granted in express words;
2. Those necessary or fairly implied in, or incident to, the powers expressly granted;
3. Those essential to the declared objectives and purposes of the corporation, not simply convenient, but indispensable.

More recently, in *Development Industries, Inc. v. City of Norman, Okl., 412 P.2d 953 (1966),* we included among those powers those "incidental to the powers expressly granted." The question before the Court that I believe we should answer is, does a municipal corporation, by virtue of the general Oklahoma zoning statutes, under Dillon's Rule, as amended, have the authority to zone for the purposes of flood plain protection.

At 11 O.S.Supp.1977, § 43–101, municipalities are empowered to regulate and restrict the use of land in order to promote the health, safety, morals, or general welfare of the community. Granting those powers, the statute provides:

"For the purpose of promoting health, safety, morals, or the general welfare of the community, a municipal governing body may regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts and other open spaces, the density of population, and the location and use of buildings, structures and land for trade, industry, residence, or other purposes."

I believe that the above quoted language is ample authority for municipal flood plain zoning, as the very purpose of flood plain zoning is to promote the health, safety, and general welfare of the community. These purposes are both laudable and encompassed within the statute. In addition, municipalities, in establishing flood plain zoning, are doing nothing more than regulating and restricting the density of population in such areas, the use of buildings and land in such area, the size of buildings and other structures in the area, and the percentage of lots that may be occupied—all of which are authorized under the above quoted statute.

Thus, both the purposes for flood plain zoning, and the means to accomplish such purposes, are encompassed within the general statutory zoning authorities of municipalities. The general rule developed by case law in this jurisdiction is that zoning ordinances and particular provisions thereof will not be declared unconstitutional unless they are clearly arbitrary, capricious, or discriminatory, or without a reasonable or substantial relationship to public health, safety, morals, or general welfare. As I believe there is a substantial relationship between flood plain zoning and the general welfare, health, and safety of a community, I see no grounds for holding flood plain zoning unconstitutional.

Additionally, I would point out that Section 43–103 of Title 11 O.S.Supp.1977, provides that:

"Municipal regulations as to buildings, structures and land shall be made in accordance with a comprehensive plan and be designed to accomplish any of the following objectives:

"1.  .  .  .

"2. To secure safety from fire, panic *and other dangers*;

"3. To promote health and the general welfare". [Emphasis added]

One of the prime motivations of flood plain zoning is the protection of life and property from the dangers of flooding. The above quoted statute provides that a comprehensive plan for land usage may be enacted to accomplish safety from fire, panic *and other dangers.* Clearly, the dangers of flooding would be included within the phrase, "and other dangers". This being the case, I believe that this provision supplies additional authority for flood plain zoning by municipalities.

For the above stated reasons, I would have addressed the constitutional question and held that municipalities are indeed authorized to enact flood plain zoning in order to promote the health, safety, and general welfare of the community. To hold otherwise would be to deny the fact that flooding constitutes a threat to both the health and safety of a community.