Argued April 18, reversed September 24, rehearing denied October 22, 1929.

## In the Matter of the Application of GEORGE E. TEETERS for a Writ of Habeas Corpus.

(280 Pac. 660.)

For appellant there was a brief over the name of *Mr. Walter E. Critchlow,* with an oral argument by *Mr. T. B. Handley.*

For respondent there was a brief over the name of *Mr. John M. Hickson,* with an oral argument by *Mr. C. O. Fenlason.*

RAND, J.—The plaintiff, George E. Teeters, appeals from an order in a *habeas corpus* proceeding dismissing the writ and refusing to discharge him from arrest and imprisonment under a body execution issued in a civil action. The facts are as follows:

On March 9, 1921, one Lawrence L. Lee obtained a judgment in the sum of $1,900 in the Circuit Court for Multnomah County in an action wherein he was plaintiff and Teeters, the plaintiff herein, was defendant. The judgment was entered on stipulation of the attorneys in the case and while Teeters was absent in another state and before the cause was at issue. The stipulation recites "that in consideration of defendant's having confessed judgment in open court for the full sum of $1900 in the above-entitled cause, the plaintiff hereby agrees to accept the sum of $600 in full payment, satisfaction and discharge of said judgment rendered in this cause provided that said sum of $600 be paid before one year from the date of said judgment, but not otherwise." The judgment contains no recital of the terms of the stipulation. The stipulation, however, was filed in the cause and made a part of the record of the cause and is a part of the record before us upon this appeal, together with a copy of the amended complaint in the original cause and Teeters' answer thereto.

It appears from the amended complaint that the action was brought to recover damages growing out of Lee's eviction from certain leasehold premises in the City of Portland, which at the time of his eviction he was, together with others, in possession of under a lease which had been assigned to him by Teeters. The amended complaint in said action alleged that prior to such assignment, Teeters and Walker, as partners, operated a garage and repair-shop on said premises and occupied the premises under a lease, each owning an undivided one-half interest in the property and in the leasehold estate; that Teeters offered to sell his interest to Lee for the sum of $2,900 and induced Lee to purchase the same from him by falsely and fraudulently repre-

senting to him that the lease contained no covenants or restrictions against its assignment and that the lessees under the terms of the lease would, upon payment of the sum of $145 per month as rental, be entitled to remain in possession of the leased premises until December 31, 1921; that believing said representations and relying thereon, he purchased Teeters' said interest and took an assignment of his interest in the lease and paid him therefor the sum of $2,900; that the lease did contain restrictions and that because of such restrictions he was evicted from the premises on March 15, 1920, to his damage, as stated in the original complaint in the sum of $2,900, and as stated in the amended complaint in the sum of $1,900; and that because of said eviction, Lee was only permitted to occupy the premises from December 29, 1919, to March 15, 1920.

Teeters appeared in the action and filed an answer in which he admitted the sale and assignment to Lee and the receipt of the money, but denied that he had ever made any representations to Lee or that the lease contained any restrictions prohibiting him from assigning it. He also denied that Lee had ever been ousted from the premises because of any restrictions contained in the lease. He also alleged as an affirmative defense that he had obtained his interest under the lease by assignment from a former lessee, that other assignments of the lease had been made with the knowledge of and without objection upon the part of the lessor, and that rentals had been paid to and accepted by the lessor from others than the original lessees. There was no reply filed in the action and, although the case was not at issue, it was set down for trial in Teeters' absence from the state and on the stipulation referred to said judgment was entered.

No showing appears in the record of any authority from Teeters to his attorneys empowering them to consent to the entry of a judgment for $1,900 which could be satisfied within one year thereafter by the payment of $600 only, nor has it been claimed here that the judgment was invalid because it was entered for one amount under a stipulation providing for its satisfaction and discharge upon. payment of a lesser and different amount, but since the parties themselves have not questioned its validity and the case can be decided upon other grounds, we shall treat the judgment as valid.

So far as the record discloses, no steps were taken by Lee to enforce payment of the judgment until early in 1928, when an execution against the property of Teeters was returned unsatisfied and an order was made later in the cause restraining him from selling or disposing of his property and also requiring him to appear in court on March 16, 1928, to be examined in respect to any property belonging to him which could be applied in satisfaction of the judgment. What action was taken at said time does not appear but it does appear that at or about said time, Teeters paid on the judgment the sum of $175. On July 11, 1928, a paper in the form of an affidavit, not verified or sworn to but signed by J. M. Hickson, one of Lee's attorneys, was filed and without any other proceedings being had or taken or any order being made by the court an execution against the person of Teeters was issued by the clerk of the court and he was arrested and placed in jail and, while so in custody, he sued out a writ of *habeas corpus*. The return of the sheriff to the writ shows the issuance of the body execution and Teeters' arrest thereunder. A hearing was then had and an order made dismissing the writ and re-

manding Teeters to the custody of the sheriff, from which he has appealed.

The record shows that Teeters was not arrested provisionally at any time before judgment nor was any order made for his arrest at any time prior to the issuance of the body execution. Under these circumstances, the only authority conferred by the statute for the issuance by the clerk without leave of the court of an execution against the person of the defendant was that contained in Section 218, subdivision 1, Or. L., of which provides that:

"If the action be one in which the defendant might have been arrested, as provided by section 259, an execution against the person of the judgment debtor may be issued to any county within the state after the return of the execution against his property, unsatisfied in whole or in part, as follows:

"1. When it appears from the record that the cause of action is also a cause of arrest as prescribed in section 259, such execution may issue of course; * * "

The question, therefore, is: Does it appear from the record that the cause of action upon which the judgment was obtained by Lee is also a cause of arrest as prescribed in Section 259? If so, the clerk had authority to issue the writ of execution; otherwise, he had no such authority and the imprisonment thereunder was illegal.

One of the causes of arrest prescribed in Section 259 is when the defendant has been guilty of fraud in contracting the debt or in incurring the obligation for which the action is brought. The action was brought to enforce the obligation of Teeters to respond in damages for fraudulent representations alleged to have been made by Teeters to Lee which induced Lee to part with his money, and this is the

obligation which Lee was seeking to enforce in the action and if the allegations of his complaint were true and had been established upon the trial, then the cause of arrest and the cause of action were identical and in such case the clerk would have had authority to issue the writ as a matter of course. The statute, however, provides that it is from the record of the cause and not from the complaint alone that it must appear that the cause of action is also the cause of arrest as prescribed in Section 259. This record shows that the question of whether Teeters was guilty of fraud in inducing Lee to part with his money has never been adjudicated. The judgment contains no recital of that fact nor has there ever been any finding upon that question by any court or jury. The only circumstance in the case tending to support the allegations of the amended complaint that Teeters made fraudulent representations is that which arises from what upon its face appears to be a wholly unauthorized exercise of power by Teeters' attorneys during the absence, stipulating for the entry of what upon its face appears to be a wholly invalid judgment. Our statute differs from other statutes which, in some cases, provide that the fraud may appear from the complaint and not from the record of the cause as provided by the statute in this state. Hence, unless the mere recital in the complaint of charges of fraud, which are denied in the answer and which have never been established or proven upon trial, is sufficient to show that the cause of action and the cause of arrest are identical, then the clerk had no authority to issue the writ in question.

This leads us to a consideration of what is meant by the words "cause of action" as used in the statute. As said by BUCKLEY, L. J.:

"An action is a legal proceeding in which a plaintiff claims against a defendant or against a fund enforcement of some obligation towards the plaintiff binding the defendant or the fund. The plaintiff must allege facts which if true give rise as matter of law to such an obligation. Such alleged facts constitute a cause of action. In the absence of such alleged facts, in other words, if there is no cause of action alleged, an action will not lie."

■ To this we might add that if the facts alleged in the complaint are sufficient to constitute a cause of action yet no cause of action exists unless the alleged facts are themselves true or susceptible to proof. It is not the allegation of the facts but the existence of the facts or truth of them which constitute plaintiff's right to recover in an action. Bouvier informs us that a cause of action is "matter for which an action may be brought"; that "when a wrong has been committed, or a breach of duty has occurred, the cause of action has accrued"; hence, unless a wrong has been committed or some breach of duty has occurred, there is no cause of action notwithstanding it may be alleged in the complaint. In attempting to define a cause of action, Mr. Pomeroy, in his work on Code Remedies, says:

"Every action is brought in order to obtain some particular result which we term the remedy, which the code calls the 'relief,' and which, when granted, is summed up or embodied in the judgment of the court. This result is not the 'cause of action' as that term is used in the codes. It is true this final result, or rather the desire of obtaining it, is the primary motive which acts upon the will of the plaintiff and impels him to commence the proceeding, and in the metaphysical sense it can properly be called the cause of this action, but it is certainly not so in the legal sense of the phrase. This final result is the 'object of the action' as that term is frequently

used in the codes and in modern legal terminology. It was shown in the introduction that every remedial right arises out of an antecedent primary right and corresponding duty and a delict or breach of such primary right and duty by the person on whom the duty rests. Every judicial action must therefore involve the following elements: a primary right possessed by the plaintiff, and a corresponding primary duty developing upon the defendant; a delict or wrong done by the defendant which consisted in a breach of such primary right and duty; a remedial right in favor of the plaintiff, and a remedial duty resting on the defendant springing from this delict, and finally the remedy or relief itself. Every action, however complicated or however simple, must contain these essential elements. Of these elements, the primary right and duty and the delict or wrong combined constitute the cause of action in the legal sense of the term and as it is used in the codes of the several states. * * The cause of action, as it appears in the complaint when properly pleaded, will therefore always be the facts from which the plaintiff's primary right and the defendant's corresponding primary duty have arisen, together with the facts which constitute the defendant's delict or act of wrong.''

■■ From this it seems to be clear that the final result in the action, that is to say the judgment obtained in the action, is not the cause of action referred to in the statute. To obtain the judgment is the object of the action and the cause of action and all controversies between the parties in respect to the matters involved were merged in the judgment but notwithstanding that there has never been any determination by any court that the defendant was guilty of fraud in the transaction and hence while, if what plaintiff alleged in his complaint was true, there was a cause for defendant's arrest, yet the record of the cause itself does not show such fraud

as would permit us to say as a matter of law that the cause of action appearing in the record and the cause of arrest are the same. We, therefore, conclude that the condition of the record is such that it does not appear therefrom that the cause of action is also a cause of arrest as prescribed in Section 259 and, therefore, the clerk had no authority to issue a writ of execution against the person of the defendant in the instant case.

In *Humphrey* v. *Brown,* 17 How. Pr. (N. Y.) 481, the complaint charged the defendant with having made false and fraudulent representations inducing the plaintiff to pay a draft. Defendants made no appearance and permitted judgment to be entered by default and it was held in that case, on motion to set aside an execution which had been issued against the person without an order of the court, that where, in such case, execution against the person has issued, of course, against the defendant, he may, on motion to set aside such execution, not as irregularly issued but as having no foundation in the merits of the case, controvert such facts. In that case, although the complaint had charged fraud and a judgment by default had been entered, the question whether the defendants had committed fraud was held to be one which the defendants could controvert and, after showing there was no fraud, defendants' motion to set aside the execution against their persons was granted.

In *Banning* v. *Roy,* 47 Or. 119 (82 Pac. 708, 114 Am. St. Rep. 908), a case where the defendant had been provisionally arrested before the entry of a judgment and discharged on bail, the action being to recover on the bail bond, it was held that if the action is in fact one in which the defendant might

have been arrested and the other conditions provided by Section 218 exist, it is sufficient to entitle the plaintiff to an execution against defendant's person without any order to that effect in the judgment. In that case the court did not treat the question involved here, that is to say whether it appeared from the record in that case that the cause of action was also a cause of arrest.

■■ Our conclusion is that there must be something more than the mere allegations of the complaint charging fraud which is denied by the answer before, upon a judgment in the action, the plaintiff is entitled to a writ of execution against the person of the defendant upon the ground that the cause of action and the cause of arrest are the same, especially so in a case where, as here, a judgment was entered against defendant by stipulation of his counsel in his absence for one amount which it was stipulated could be paid for with a much less amount. The entry of a judgment for money must state the amount with certainty and require the judgment debtor to pay that amount: 1 Freeman on Judgments (5 ed.).

■■ To entitle plaintiff to his discharge in these proceedings, it being a *habeas corpus* proceeding and not a motion to vacate the writ of arrest, provided by Sections 281 and 3549–3561, Or. L., as was done in *Heckinger* v. *Swank,* 78 Or. 526 (153 Pac. 784), it must appear from the record that the plaintiff is entitled to his discharge because coming within one of the cases provided by Section 642: See *Barton* v. *Saunders,* 16 Or. 51 (16 Pac. 921, 8 Am. St. Rep. 261); *Ex parte Tice,* 32 Or. 179 (49 Pac. 1038); *Ex parte Foster,* 69 Or. 319 (138 Pac. 849). Subdivision 4 of Section 642, Or. L., provides for the discharge of the prisoner in a *habeas corpus* proceed-

ing "when the order or process though in proper form has been issued in a case not allowed by law." We are of the opinion that the writ of arrest was not authorized in the instant case because not issued in a case allowed by law. For that reason, it was error for the court to discharge the writ and remand the plaintiff to the custody of the sheriff. The record shows that prior to the issuance of the writ the plaintiff was directed to appear before the court for examination upon the question of whether he had any property subject to the satisfaction of the judgment. Presumably a hearing was had thereon and it was found that he had no property not exempt from execution. There is no contention that he had property which is not exempt.

The cause will, therefore, be remanded with directions to discharge the plaintiff from custody but without costs against the defendant in the writ, the sheriff of Multnomah County, who was acting officially and in conformity with what upon its face appeared to be a valid writ. It is so ordered.

REVERSED. REHEARING DENIED.

COSHOW, C. J., and MCBRIDE and ROSSMAN, JJ., concur.