Dear Representative Morgan:
This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following question:
 Can an association of Oklahoma cities and towns formed pursuant to the Interlocal Cooperation Act, 74 O.S. 2001, §§ 1001-1008[74-1001-1008], for the purpose of securing benefits and services relating to insurance for Oklahoma cities and towns, and where said association is subject to 36 O.S. 2001, § 607.1[36-607.1] make investments as authorized under Title 36 as an insurer?
 PURPOSE OF THE INTERLOCAL COOPERATION ACT
The Interlocal Cooperation Act ("Interlocal Act"), 74 O.S. 2001, §§ 1001-1008[74-1001-1008], was enacted by the Oklahoma Legislature in 1965. Section 1001 of the Interlocal Act provides:
 It is the purpose of Section 1001 et seq. of this title to permit local governmental units to make the most efficient use of their powers by enabling them to cooperate with other localities on a basis of mutual advantage and thereby to provide services and facilities in a manner and pursuant to forms of governmental organization that will accord best with geographic, economic, population and other factors influencing the needs and development of local communities. The cooperating governmental units can, if they deem it necessary, create an entity to carry out the cooperative functions.
Id.
The Interlocal Act allows cities and towns as public agencies[1] to band together by agreement to facilitate the performance of cooperative functions for their mutual benefit and advantage or jointly form a separate entity to perform such functions. This includes transacting insurance as an "insurer" pursuant to the provisions of the Oklahoma Insurance Code found in 36 O.S. 2001, § 607.1[36-607.1], which provides:
 Notwithstanding any other provision of law, an entity organized pursuant to the Interlocal Cooperation Act, Section 1001 et seq. of title 74 of the Oklahoma Statutes, for the purpose of transacting insurance shall be considered an insurer at such time that the entity has within a twelve-month period received aggregate premiums of One Million Dollars ($1,000,000.00) for all kinds of insurance that the entity transacts. such an entity shall be eligible to qualify for and hold a certificate of authority to transact insurance in this state.
Id.
Therefore, if the required premiums are received, the insurance entity created under the Interlocal Act has the authority to transact insurance.[2] the activities that constitute transacting insurance are described in 36 O.S. 2001, § 105[36-105], and include "[s]olicitation and inducement," "[p]reliminary negotiations," "[e]ffectuation of a contract of insurance" and "[t]ransaction of matters subsequent to effectuation of the contract and arising out of it." Id.
Although section 607.1 of Title 36 allows an entity formed under the Interlocal Act, regardless of any other law, to be considered an insurer for the purpose of transacting insurance, this section does not necessarily mean that such an entity can make investments as an insurer. Neither of the foregoing provisions of the Oklahoma Insurance Code mentions or specifically authorizes investments to be made by the entity created by the interlocal Act.[3] Whether, pursuant to 36 O.S. 2001, § 607.1[36-607.1], a particular entity qualifies as an insurer authorized to transact insurance under the Oklahoma Insurance Code, and whether making particular investments constitutes transacting insurance under 36 O.S. 2001, § 105[36-105], are questions of fact outside the scope of an Attorney General Opinion. See 74 O.S. 2001, § 18B[74-18B](A)(5).
 POWERS OF PUBLIC AGENCIES UTILIZING THE INTERLOCAL COOPERATION ACT
Even assuming the entity created by the Interlocal Act is qualified as an insurer to make investments, the Interlocal Act does not create new powers that the public agencies can exercise only as a result of the Interlocal Act. The Oklahoma Supreme Court has ruled that "[t]he Act by its terms contemplates cooperation or joint exercise between the various governmental entities of activities permitted of the individual entities. The Act does not create New powers to be exercised Independently
by the legal or administrative agency." Rollow v. West,479 P.2d 962, 963 (Okla. 1971) (emphasis added).[4]
Furthermore, although the Interlocal Act permits an activity that could be exercised solely by a public agency to be exercised jointly with other public agencies or through an entity created by them, it does not permit them to exercise more authority or power just because they are acting jointly under the Interlocal Act. This position is supported by the language of the Interlocal Act, specifically Section 1004(a), which states that "[a]ny power or powers, privileges or authority exercised or capable of exercise by a public agency of this state may be exercised and enjoyed jointly with any other public agency of this state. . . ." 74 O.S. 2001, § 1004[74-1004](A). Also, acting jointly by agreement pursuant to the Interlocal Act does not allow either public agency to relinquish any of its legal obligations or responsibilities, resulting in each agency being treated as if it were acting independently. Id. § 1004(E).[5]
The extent of municipal corporate power under Oklahoma law is governed by what has been referred to as "Dillon's Rule."[6] The principles of "Dillon's Rule" were enunciated in Morland Development Co. v. City of Tulsa, 596 P.2d 1255
(Okla. 1979), in which Justice Barnes, in a special concurrence, stated:
 In In re Gribben, 5 Okl. 379, 47 p. 1074 (1897), And Mitchener v. City com'rs of City of Okmulgee, 100 Okl. 98, 228 P. 159 (1924), this State adopted and adhered to what is commonly called "Dillon's Rule", which provides that municipal corporations possess, and can exercise, the following powers, and no others:
 1. Those granted in express words;
 2. Those necessary or fairly implied in, or incident to, the powers expressly granted;
 3. Those essential to the declared objectives and purposes of the corporation, not simply convenient, but indispensable.
 More recently, in Development Industries, Inc. v. City of Norman, Okl., 412 P.2d 953 (1966), We included among those powers those "incidental to the powers expressly granted."
Id. at 1258-59.
As previously mentioned, the statutes in question do not expressly grant municipal corporations acting through an interlocal entity the power to make investments as an insurer. Nor is the power to make all of the same types of investments that are allowed as an insurer essential or indispensable to the objectives of a municipal corporation. While arguably such power is incidental to or implied by the statutory grant of power to act as an insurer for the purpose of transacting insurance, this reasoning is also not supported. No cases or authority has been found by this office that has determined that making investments as an insurer by an interlocal entity may be implied from the express grant of power to transact insurance as an insurer under 36 O.S. 2001, § 607.1[36-607.1]. It is doubtful the legislature intended municipal corporations to gain such power by implication through provisions of the Oklahoma Insurance Code. This position is supported by the opinion of the Oklahoma Supreme Court in Cain'sCoffee Co. v. City of Muskogee, 44 P.2d 50 (Okla. 1935), where the court stated:
 Municipal corporations can exercise only such powers of legislation as are given them by the law making power of the state, and grants of such powers are strictly construed against the corporations and when any fairly reasonable doubt exists as to the grant of the power, such doubt is resolved by the courts against the corporation, and the existence of the power is denied.
Id. at 53 (citations omitted).
Here, reasonable doubt exists as to the grant of investment power that, if granted, would most likely be found expressly stated in the Oklahoma Municipal Code or in the provisions of Public Finance found in title 62, rather than through the back door by way of the Oklahoma Insurance Code.
 INVESTMENT POWER OF MUNICIPAL CORPORATIONS The general investment power of a municipality appears in Title 62, Public Finance, which in pertinent part provides:
 Except as otherwise provided for by law, . . . the treasurer of any city or town, when authorized by the appropriate governing body by a written investment policy, ordinance or resolution, shall invest monies in the custody of the treasurer in:
 1. Direct obligations of the United States Government . . .;
 2. Collateralized or insured certificates of deposits of savings and loan associations, banks, savings banks and credit unions located in this state . . .;
 3. Savings accounts or savings certificates of savings and loan associations, banks, and credit unions . . .;
 4. Investments as authorized by Section 348.3 of this title which are fully collateralized in investments specified . . .;
 5. County, municipal or school district direct debt obligation for which an ad valorem tax may be levied or bond and revenue anticipation notes. . . .
62 O.S. 2001, § 348.1[62-348.1].
Title 11, Cities and Towns, also contains a section concerning investments. This section states "[a] municipality may invest its funds in any bond, note, or other evidence of indebtedness issued by those agencies, authorities, instrumentalities, or public entities whose governing boards are appointed by the municipality or issued by any public trust of which it is sole beneficiary. . . ." 11 O.S. 2001, § 17-101[11-17-101](B).
These are similar investments that insurance companies can also make. Under the Oklahoma Insurance Code, an insurer with less than $1,000,000 in assets can only invest in cash and securities guaranteed by the United States; state and Canadian public obligations; county, municipal and district obligations; public improvement bonds; and bank and savings and loan deposits. 36 O.S. 2001, § 1606[36-1606].[7] However, after an insurer has attained the required level of assets, other investments are authorized in Title 36, Article 16 of the Oklahoma Insurance Code, including the ability to invest in corporate obligations under section 1614, and preferred or guaranteed stock under Section 1615.
The problem with the aforementioned investment options, as applied to an association of municipalities under an interlocal agreement operating as an insurer, is that the Oklahoma Constitution expressly prohibits municipalities from making equity investments in a company. OKLA. CONST. art. X, § 17. This section of the Oklahoma Constitution specifically provides:
 The Legislature shall not authorize any county or subdivision thereof, city, town, or incorporated district, to become a stockholder in any company, association, or corporation, or to obtain or appropriate money for, or levy any tax for, or to loan its credit to any corporation, association, or individual.
 Id.
This particular provision of the Constitution has been interpreted by the Oklahoma Supreme Court to be "a limitation, and not a grant of power, and was adopted for the purpose of preventing the investment of public funds in private enterprises." Lawrence v. Schellstede, 348 P.2d 1078, 1082
(Okla. 1960) (holding that "[m]ere membership in a mutual insurance company does not offend the constitutional limitation unless such membership would constitute a stockholder or create a liability or obligation"). This limitation further supports the premise that municipalities do not possess the power through the Interlocal Act to make all of the investments an insurer can exercise under the Oklahoma Insurance Code.
Recognizing that the Interlocal Act does not create any new powers for a municipality, whose powers are limited by what is allowed by state law, and that a power is denied if fairly reasonable doubt exists as to its grant, the issue of making investments must be considered independently of the Interlocal Act, regardless of whether the municipality is acting as an insurer through a jointly created entity under the Interlocal Act. If the municipality could not make an investment independently of the Interlocal Act then it cannot make such an investment just because it acted jointly through an entity deemed to be an insurer as a result of the Interlocal Act. The power of a municipality to make investments must be in accordance with the powers expressly granted to it under State law.[8]
 It is, therefore, the official Opinion of the Attorney General that:
 Although the Interlocal Cooperation act, 74 O.S. 2001, §§ 1001-1008[74-1001-1008], allows cities and towns as public agencies to exercise jointly those powers they possess individually, the Interlocal Act does not create new powers. Consequently, joining together as an "insurer" under 36 O.S. 2001, § 607.1[36-607.1] does not give cities and towns investment options that are not otherwise available to them.
 W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
 JAMES V. BARWICK ASSISTANT ATTORNEY GENERAL
[1] The definition of "public agency" in Section 1003(A)(1) of the Interlocal Act includes any political subdivision of the state of Oklahoma. A "Municipality," as defined in 11 O.S. 2001 § 1-102[11-1-102](5), means "any incorporated city or town." "Municipalities are political subdivisons of the State." In re De-annexation ofCertain Real Prop., 102 P.3d 120, 126 (Okla. 2004) (footnote omitted).
[2] In addition, it should be noted that under 51 O.S. 2001, § 167[51-167](B), "[a]ny insurance authorized by law to be purchased, obtained or provided by a municipality may be provided" by the municipality through self insurance. Id. § 167(B)(1).
[3] In addition, Section 1604 of the Oklahoma Insurance Code specifically requires investments to be authorized or approved by an insurer's board of directors.
[4] See also A.G. Opin. 83-295 (holding counties cannot enter into an interlocal cooperation agreement to purchase real property or expend monies for a private, nonprofit facility but are limited to expending monies on statutorily authorized objects of expenditure). Id. at 543.
[5] Subsection (E) of Section 1004 of the Interlocal Act states that "[n]o agreement made pursuant to this act shall relieve any public agency of any obligation or responsibility imposed upon it by law. . . ." Id.
[6] Judge Dillon, former Chief Justice of the Iowa Supreme Court, authored the first treatise on the law of municipal corporations. See
http://en.wikipedia.org/wiki/John_Forrest_Dillon (last visited June 20, 2006).
[7] See 36 O.S. 2001, §§ 1607[36-1607], 1608, 1609, 1610, 1620.
[8] See, e.g., 11 O.S. 2001, § 17-101[11-17-101](B); 62 O.S. 2001, §§ 348.1[62-348.1], 348.3(B); OKLA. CONST. art. X, § 17.